**UNION PLANTERS NATIONAL BANK OF MEMPHIS, Plaintiff,**

v.

**ABC RECORDS, INC., American Broadcasting Music, Inc., and ABC/Dunhill Music, Inc., Defendants.**

No. 78–2271.

United States District Court,
W. D. Tennessee, W. D.

June 5, 1979.

Thomas R. Todd, Jr., Macey & Zusmann, Atlanta, Ga., Mary L. Wolff, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for plaintiff.

Newton P. Allen, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for defendants.

## ORDER

WELLFORD, District Judge.

This is a diversity action arising out of various security agreements between the parties and the musician Isaac Hayes. Defendant ABC Records, Inc., asserted the attorney-client privilege in refusing to produce certain documents demanded by plaintiff. Plaintiff's motion to compel discovery was referred to the Magistrate for disposition. The action is now before the Court on ABC's objections to the Magistrate's Order deciding contrary to defendant's position.

Defendant, a New York corporation, claims the attorney-client privilege as to documents arising out of communications which took place in California. ABC argues that the Tennessee law of privilege should govern, while plaintiff asks the Court to apply the California law, presumably a more narrow privilege. The Magistrate determined that the California law should govern, but allowed defendant thirty days in which to file additional documentation with reference to the California rule.

▮ Tennessee law of contract and commercial transactions will govern this action. Federal Rules of Evidence 501 provides that "in civil actions . . . with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness . . . [or] person . . . shall be determined in accordance with state law." This Court agrees with both the reasoning and the holding of *Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978), to the effect that Rule 501 requires a district court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the state in which it sits. *Accord, In re Westinghouse Electric Corp.*, 76 F.R.D. 47 (W.D. Pa.1977). *But see Mitsui & Co. v. Puerto Rico Water Resources*, 79 F.R.D 72 (D.P.R. 1978).

Most of the cases cited by the parties arose before the adoption of the Federal Rules of Evidence; however, the general rule governing will still apply. Prior to the adoption of the Federal Rules of Evidence, Federal Rules of Civil Procedure 43(a) provided that the admissibility of evidence should be governed by the law of the state in which the federal court sat. Furthermore, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), required (and still requires) in a diversity case that the court apply state substantive law, including state conflict of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). State created privileges may involve substantive law under the *Erie* rationale. *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555–556 n. 2 (2d Cir. 1967). Thus, in the cases decided prior to the adoption of the Federal Rules of Evidence, the court generally looks first to the conflicts law of the state in which it is sitting and applies that law in determining the privilege asserted. *See Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972), *cert. den.*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); *Hare v. Family Publications Services, Inc.*, 334 F.Supp. 953 (D.Md.1971); *R & J Dick Co. v. Bass*, 295 F.Supp. 758 (N.D.Ga. 1968); *Hill v. Huddleston*, 263 F.Supp. 108 (D.Md.1967); *Application of Cepeda*, 233 F.Supp. 465 (S.D.N.Y.1964). *Palmer v. Fisher*, 228 F.2d 603 (7th Cir. 1955) and *Ex parte Sparrow*, 14 F.R.D. 351 (N.D.Ala. 1953) merely apply the law of the forum state in determining the scope and validity of the privilege asserted.

This Court has found no Tennessee case considering which state's privilege law

should govern where the laws of two states are implicated. An analogous case is *Capital Airlines, Inc. v. Barger*, 47 Tenn.App. 636, 341 S.W.2d 579, *cert. den.*, 1960. That was a wrongful death action arising out of a passenger airplane crash. Defendant argued that the jury should not have been instructed on the Tennessee doctrine of *res ipsa loquitur* because the accident occurred in Michigan, which did not recognize the doctrine. The court held that the jury had been properly instructed, stating that where there is a conflict, questions of evidence are governed by the law of the forum.

In Tennessee the attorney-client privilege is codified at TCA § 29–305. The statute embodies the common law rule. *Johnson v. Patterson*, 81 Tenn. 626 (1884). In *Quarles v. Sutherland*, 215 Tenn. 651, 389 S.W.2d 249 (1965), plaintiff argued that the doctor-patient privilege created a cause of action if breached. The court disagreed and stated that TCA §§ 29–305 and 24–103, codifying the attorney-client and husband-wife privileges, respectively, concern themselves only with matters of evidence and do not create a cause of action.

■ The Court believes that the Tennessee courts, and particularly its Supreme Court, would hold that in the present situation the attorney-client privilege is a question of evidence, and that in determining the scope and validity of the privilege the law of Tennessee would govern.

In certain situations a corporation may assert the attorney-client privilege. See *McCormick on Evidence*, Cleary Ed. (1972), pp. 178–9. The classic statement of the privilege is found in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–9 (D.Mass.1950):

"... The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

When a corporate client is involved, the question arises whether the relationship between the person making the communication and the corporation itself are such as to bring about the privilege, assuming that the other requisites are present. The test most often used is the "control group" test, first formulated in *City of Philadelphia v. Westinghouse*, 210 F.Supp. 483 (E.D.Pa.1962). Under this rationale an employee's statement is not considered a corporate communication unless the employee

is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority . . . 210 F.Supp. at 485.

A second test was formulated in *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970), *aff'd mem by an equally divided court*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). Concluding that the control group test is not wholly adequate because it fails to protect corporate communications not made by members of the control group, the court held that

an employee of a corporation, though not a member of its control group, is sufficiently identified with the corporation . . . where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment. 423 F.2d at 491–2.

■ Considering these two tests and the criticism directed at each, the Eighth Cir-

cuit *en banc* adopted a modified *Harper & Row* test in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977). In this test the privilege is applicable to an employee's communication if

> (1) the communication was made for the purpose of securing legal advice (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

572 F.2d at 609. The corporation has the burden of showing that the communication in issue meets all of the above requirements.

The Magistrate, concluding that California law applied, held that *D. I. Chadbourne, Inc. v. Superior Court of San Francisco*, 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700 (1964), states the proper test. That case laid down a number of test indicia to be applied in determining whether a particular communication should be protected.

The *Diversified Industries* test seems to be the best reasoned approach to the question of corporate client communications and the one which this Court believes would be adopted by the Tennessee Supreme Court.

This matter is accordingly remanded to the Magistrate for a determination of plaintiff's motion to compel under the test adopted here. ABC has the burden of establishing that the privilege applies to each communication at issue and that the privilege has not been waived under the circumstances. The Magistrate may require an *in camera* inspection of the documents if that is deemed necessary for a ruling on the motion.