**In re GRAND JURY PROCEEDINGS— Larry GORDON, Witness,**

**John DOE, Intervenor-Appellant,**

**v.**

**UNITED STATES of America, Respondent-Appellee.**

**No. 83–3243.**

United States Court of Appeals, Sixth Circuit.

Argued June 24, 1983.

Decided Dec. 5, 1983.

Arthur M. Schwartz, Denver, Colo., H. Louis Sirkin (argued), Cincinnati, Ohio, for intervenor-appellant.

David O. Bauer, U.S. Dept. of Justice, Cleveland, Ohio, William C. Bryson (argued), Washington, D.C., for respondent-appellee.

Before EDWARDS, and KRUPANSKY, Circuit Judges, and REED, District Judge *.

KRUPANSKY, Circuit Judge.

The intervenor-appellant, John Doe (Doe), appeals from an order of the District Court for the Northern District of Ohio which requires Larry S. Gordon (Gordon) to

---

* Hon. Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation.

answer certain questions posed by a federal grand jury.

The factual background to this controversy is straightforward. For several years a grand jury sitting in the Northern District of Ohio has been conducting an investigation into possible violations of the Internal Revenue Code by Reuben Sturman (Sturman) and several alleged corporate facades under his control.

Despite continuous efforts, the grand jury has been frustrated in its attempts to secure documented information concerning the stock ownership and/or control of the corporations which are the subject of the grand jury investigation. On May 2, 1980, the grand jury issued a subpoena *ad testificandum* to Larry S. Gordon (Gordon), an attorney with the law firm of Berkman, Gordon, Kancelbaum & Levy. Gordon appeared on the scheduled date and testified. He identified 12 corporations incorporated by his law firm and also four others as clients of the firm. Gordon further testified that, at some period of time, the corporate record books and stock ledgers for these corporations were kept at his firm's offices. Finally, Gordon acknowledged that Sturman was a client of the firm who was represented by Gordon.

However, when confronted by certain inquiries designed to elicit information concerning the alleged *de jure* corporate status of the corporations here in issue, Gordon refused to answer, invoking the attorney-client privilege. Accordingly, on January 22, 1982, the government petitioned the district court to compel Gordon to:

1. identify the person or persons who requested each incorporation;

2. identify the person or persons who provided the law firm with information concerning the identity of the officers and shareholders of each corporation; and

3. identify the agent or representative the firm dealt with when legal mat-

ters arose concerning each of the named corporations;

4. identify the person or persons who requested and/or received custody of the records of each corporation from the law firm in January, 1978.

The government submitted an affidavit under seal in support of its motion.

Thereafter, Gordon requested that he be permitted to examine his grand jury testimony and the affidavit in support of the aforementioned motion that had been submitted by the government under seal. A motion to intervene was also filed by a "John Doe" asserting that he was the individual the government was attempting to identify through Gordon's interrogation.

On January 18, 1983 the lower court granted Gordon's request to examine his grand jury testimony but denied him access to the affidavit filed by the government in support of its motion to compel answers to the grand jury. The court deferred ruling on Doe's motion to intervene to enable Doe to demonstrate to the court that he was in fact Gordon's client and the target of the inquiries. On March 15, 1983, after reviewing, *in camera,* an affidavit from Doe, the lower court permitted him to intervene "on the basis of John Doe's claim of attorney-client privilege." Doe had also asserted a right to intervene based on the Fifth Amendment, but the lower court found the reliance "misplaced."

On March 29, 1983, the lower court granted the government's motion to compel Gordon to answer the four identity questions directed to him concluding that the answers would not constitute an invasion of the attorney-client privilege.

The intervenor appealed from this order, execution of which has been stayed by the lower court.

 Initially, this Court is confronted with a jurisdictional issue.[1] Generally, an order compelling testimony or denying a motion to quash a grand jury subpoena is

---

1. Although the government does not contest this Court's jurisdiction, the Court has the obligation to consider the issue, *sua sponte. See,*

*e.g., Columbus Coated Fabrics v. Industrial Commission of Ohio,* 498 F.2d 408 (6th Cir. 1974).

not appealable. *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). A party seeking to contest the validity of the trial court's order must refuse compliance, thereby inviting a contempt citation which, when imposed, becomes an appealable order.

The Supreme Court has recognized an exception to this rule when the party seeking review has a more direct interest in preventing disclosure of the information sought by the grand jury than the individual to whom the subpoena was directed. *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). The rationale for the exception recognizes that the subpoenaed party, to avoid a contempt citation, may voluntarily comply with the subpoena thereby depriving the real party in interest of a protected right and appellate review.

Presently there is a conflict within the Circuits as to the application of the *Perlman* exception, where, as here, a client seeks immediate review of an order compelling testimony or documents from his attorney. The majority view recognizes the exception and permits immediate appellate review. *See United States v. Jones,* 696 F.2d 1069 (4th Cir.1982); *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach),* 695 F.2d 363 (9th Cir.1982); *In re Grand Jury Proceedings (Damore),* 689 F.2d 1351 (11th Cir.1982); *In re Grand Jury Proceedings (Fine),* 641 F.2d 199 (5th Cir.1981); *In re Grand Jury Proceedings (Malone),* 655 F.2d 882 (8th Cir.1981); *In re Katz,* 623 F.2d 122 (2d Cir.1980); *In re Grand Jury*

*Proceedings (FMC Corp.),* 604 F.2d 798 (3d Cir.1979); *Velsicol Chemical Corp. v. Parsons,* 561 F.2d 671 (7th Cir.1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). The D.C. and First Circuits have decided that the order is not immediately appealable. *In re Sealed Case,* 655 F.2d 1298 (D.C.Cir.1981); *In re Oberkoetter,* 612 F.2d 15 (1st Cir.1980).

In concluding that the order is not immediately appealable, the First Circuit stated that a "stout-hearted" attorney may risk a contempt citation in his client's interest. This premise is tenuous. As noted by the Fifth Circuit:

> We suspect that the willingness of a lawyer to protect a client's privilege in the face of a contempt citation will vary greatly, and have a direct relationship to the value of the client's business and the power of the client in relation to the attorney. We are reluctant to pin the appealability of a district court order upon such precarious considerations.

\* \* \* \* \* \*

> Although we cannot say that attorneys in general are more or less likely to submit to a contempt citation rather than violate a client's confidence, we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to make such a sacrifice. That serious consequence is enough to justify a holding that a client-intervenor may appeal an order compelling testimony from the client's attorney.

*In re Grand Jury Proceedings (Fine), supra,* at 202–03 (footnote omitted).[2]

---

**2.** The American Bar Association's former Disciplinary Rules permitted a lawyer to disclose a client's confidences when "required by law or court order." DR 4–101(e)(2). *See generally In re Grand Jury Proceedings (Fine), supra* at 202–03. The recently adopted Model Rules of Professional Conduct do not expressly address the attorney's responsibility to maintain confidentiality in the face of a court order. Rule 1.6 provides as follows:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except

for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a de-

■ This Court adopts the above-quoted logic and joins the majority of other Circuits in applying the *Perlman* exception in those cases wherein a client seeks immediate appeal of an order compelling testimony from his attorney. Accordingly, the Court's appellate jurisdiction is properly invoked in the matter at bar.[3]

■ Addressing the merits of the instant case, it is evident that the four interrogatories directed to Gordon merely seek the identity of his client. This Circuit has acknowledged the "unanimously embraced ... general rule that the identity of a client is ... not within the protective ambit of the attorney-client privilege." *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 451 (6th Cir.1983).

This Court, in *In re Grand Jury Investigation No. 83–2–35, supra*, has also recognized two exceptions to the general rule. The first exception, characterized as the "legal advice" exception, was defined by the Ninth Circuit in *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach), supra* at 365:

> A significant exception to this principle of non-confidentiality holds that [the identity] may be privileged when the person invoking the privilege is able to show

that a strong possibility exists that disclosure of [his identity] would implicate the client in the very matter for which legal advice was sought in the first case.

In the case at bar, the district court concluded that the "legal advice" exception was inapplicable to this case. This Court concurs. The record, including the *in camera* affidavit of Doe, discloses that Doe sought legal assistance to incorporate several companies. There is no criminal implication arising from Doe having directed an attorney to incorporate a number of business enterprises. Accordingly, the legal advice exception is unavailing to Doe.

The second exception recognized in *In re Grand Jury Investigation No. 83–2–35*, is applicable "where disclosure of the identity would be tantamount to revealing an otherwise confidential communication." *In re Grand Jury Investigation No. 83–2–35, supra* at 453. As pronounced by the Fourth Circuit:

> The privilege may be recognized where so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication.

*NLRB v. Harvey*, 349 F.2d 900, 905 (4th Cir.1965).

---

fense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

On its face, the Rule does not afford the attorney the option of disclosing information when compelled by court order. However, the Comment accompanying Rule 1.6 states, in pertinent part:

> The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, Rule 1.6(a) requires the lawyer to invoke the privilege when it is applicable. The lawyer *must* comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.

(emphasis added). The Comment appears to indicate that an attorney cannot place himself in contempt but must disclose confidences when so ordered by a court.

In any event, this Court does not believe that appealability should hinge on an attorney's interpretation of the Disciplinary Rules, the Model Rules of Professional Conduct (whichever is applicable) or the attorney's "stout-heartedness."

**3.** In *In re Buckey*, 395 F.2d 385 (6th Cir.1968), an attorney refused to answer three questions directed to him before a grand jury, invoking the attorney-client privilege. The district court instructed the attorney to respond. The corporation for which the attorney was house counsel attempted to appeal from the lower court's order. This Court concluded that, inasmuch as the witness had not been cited for contempt, the order was not appealable.

The Court in *Buckey* did not consider the possible applicability of the *Perlman* exception. Moreover, in *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935, n. 2 (6th Cir.1980), this Court indicated that the exception does apply in an attorney-client relationship. This panel therefore does not consider *Buckey* dispositive on the issue.

In considering the applicability of the second exception, the Court addresses each of the four inquiries directed to Gordon. Inquiry # 1 seeks the identity of the individual who engaged Gordon to incorporate each company. Gordon's previous disclosures simply reveal that a client employed his firm to incorporate the companies. Doe, in his *in camera* affidavit, conceded that he is the client who directed Gordon to incorporate the companies in issue. Accordingly, the identity of the client, within the context of the developed facts, merely amounts to a disclosure of the scope and objective of the legal employment undertaken by Gordon.

The mere "fact of consultation including the component facts of . . . scope or object of employment" is not privileged. McCormick, Evidence § 90 (2d ed. 1972). *See also* 2 Weinstein's Evidence ¶ 503(a)(4)[02] (1982); *Colton v. United States,* 306 F.2d 633 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (general nature of legal services performed not privileged).[4] Thus disclosure of Doe's identity in response to inquiry # 1 would not be tantamount to disclosure of a confidential communication.

Inquiry # 2 seeks to have Gordon disclose the name of the individual who conveyed to Gordon the identity of the officers and shareholders of the various corporations. The names of shareholders and officers "are clearly a matter of corporate record [and] are not normally the kind of confidential information which is subject to the attorney-client privilege." *United States v. Mackey, supra* at 859. Inasmuch as the substance of the communication was not confidential, revelation of the identity of the individual who supplied the names of the corporate officers to Gordon cannot amount to disclosure of a confidential communication. Therefore, question # 2 does

not seek privileged information and should be answered.

Inquiry # 3 seeks the identity of the representatives of the corporations with whom the law firm communicated regarding "legal matters" involving the corporations. The inquiry does not seek, nor has there been any disclosure of, communications between Gordon and corporate representatives concerning substantive corporate legal issues. Accordingly, the second exception enunciated in *In re Grand Jury Investigation No. 83–2–35,* is totally inapplicable to inquiry # 3 and Gordon has no basis for refusing to respond.

The fourth and final question does not relate to communications which in any manner concern legal advice or legal representation. The question merely attempts to determine the identity of the individual to whom the law firm delivered the corporate records. Indeed, as the lower court noted, Doe has not indicated that the fourth question refers to him. Accordingly, there is no basis for applying the attorney-client privilege to inquiry # 4.

In sum, the Court concludes that response to the four inquiries posed by the grand jury will not infringe on the attorney-client privilege and the district court's order compelling Gordon to respond to these inquiries was proper.

■ Appellant next asserts that his attorney should have been permitted to assert the Fifth Amendment privilege against self-incrimination on behalf of his client. However, existing legal precedent in this Circuit holds that the Fifth Amendment privilege is a personal privilege and "does not permit an attorney to plead that his client might be incriminated by his testimony." *United States v. Haddad,* 527 F.2d 537, 539 (6th Cir.1975). *Accord: United*

---

4. In *United States v. Mackey,* 405 F.Supp. 854 (E.D.N.Y.1975), defendants sought dismissal of indictments on the basis that the testimony of their attorneys before the grand jury violated the attorney-client privilege. The testimony

concerned incorporation of certain business entities. Judge Weinstein held that such facts "simply relating that certain corporate documents were drawn at the behest of [the client]

*States v. Goldfarb,* 328 F.2d 280 (6th Cir. 1964).[5]

Finally, appellant asserts that he was denied due process by the district court's refusal to grant him access to the sealed affidavit filed by the government in support of its motion to compel. The government had initially submitted the affidavit to establish that Gordon's legal services had been retained in furtherance of ongoing criminal activity thereby precluding use of the attorney-client privilege to shield disclosure of communications. The lower court rejected this argument and the government has not pressed it on appeal.

The district court reviewed the affidavit *in camera* and, finding that it consisted primarily of evidence generated by the grand jury, including the testimony of other witnesses, denied Gordon and Doe access to the affidavit. The Seventh Circuit addressed this precise issue in *In re Special September 1978 Grand Jury,* 640 F.2d 49 (7th Cir.1980). In that case the government also submitted material under seal to establish that fraud vitiated the attorney-client privilege claimed by the recipients of a grand jury subpoena *duces tecum.* The trial court reviewed the documents *in camera* and, on appeal, the subpoenaed parties asserted that their rights to due process had been violated. The Seventh Circuit rejected the contention:

> The *in camera* submissions were themselves generated by the Grand Jury's investigation and were necessary to support its claim that the subpoenaed documents should be made available.
>
> * * * * * *
>
> Those documents contain the words of grand jury witnesses, the disclosure of which could affect the continued coopera-

tion of those witnesses and chill or distort the future testimony of others. In these circumstances, the judge's decision to view the documents *in camera* did not constitute a due process violation or an abuse of his discretion.

*Id.* at 57–58 (footnote omitted).

Similarly, in *In re John Doe Corp,* 675 F.2d 482, 490 (1982), the Second Circuit upheld the use of *in camera* submissions to resolve the government's claims that an attorney-client relationship was tainted by a criminal purpose:

> We recognize that appellants cannot make factual arguments about materials they have not seen and to that degree they are hampered in presenting their case. The alternatives, however, are sacrificing the secrecy of the grand jury or leaving the issue unresolved at this critical juncture. We believe those alternatives less desirable than the *in camera* submission utilized by Judge Sifton. Appellant, after all, is itself asserting a right to confidentiality, and the government wanted to test the validity of that claim. Appellant's argument that the government may not do so without sacrificing its own valid claim to secrecy seems rather ironic in the circumstances. Leaving the issue unresolved, on the other hand, would permit wholly untested claims of privilege to obstruct investigations of federal crimes. There is a public interest in respecting confidentiality of communications by clients to their attorneys, in maintaining the secrecy of grand jury proceedings and in investigating and prosecuting federal crimes. Where these interests conflict or the validity of privilege claims based on these interests are

are not privileged from disclosure before the grand jury." *Id.* at 859.

**5.** Doe's reliance on *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), is misplaced. In *Fisher,* the Supreme Court held that when a client's papers are delivered to an attorney in pursuit of legal advice, those papers are protected by the *attorney-client* privilege if the Fifth Amendment would have protected them in the hands of the client. This holding is based on the attorney-client privilege, *see, Mat-*

*ter of Grand Jury Empanelled February 14, 1978,* 603 F.2d 469, 475 (3rd Cir.1979), and this Court has previously found that privilege inapplicable to the facts of this case. The Supreme Court in *Fisher* expressly declined to decide "whether an attorney may claim the Fifth Amendment privilege of his client." *Id.* at 402 n. 8, 96 S.Ct. at 1577 n. 8. Accordingly, we adhere to our previous decisions and reject appellant's Fifth Amendment argument.

challenged, the limitations on adversary argument caused by *in camera* submissions are clearly outweighed by the benefits of obtaining a judicial resolution of a preliminary evidentiary issue while preserving confidentiality.

*Accord, In Re Grand Jury Proceedings (Fine),* 708 F.2d 1571, 1576 (11th Cir.1983). This Court is persuaded that an *in camera* submission on the facts of this case was a reasonable accommodation of the need to maintain secrecy of the grand jury investigation and the need for prompt resolution of the privilege issue. Hence, this Court finds no abuse of discretion and no deprivation of appellant's right to due process.

Accordingly, the lower court's order compelling Gordon to respond to the enumerated grand jury inquiries is AFFIRMED.