## In re SOUTHERN INDUSTRIAL BANKING CORPORATION, d/b/a Daveco, Debtor.

Irwin A. DEUTSCHER, Trustee, Plaintiff,

v.

LICK FORK, LTD., a Limited Partnership and its General Partners, Lick Fork Natural Resources Associates and Eastern Resources, Inc., Lick Fork Natural Resources Associates, a Partnership and Fred R. Langley and Eastern Resources, Inc., Defendants.

Bankruptcy No. 3–83–00372.
Adv. No. 3–83–0750.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 12, 1983.

Addendum to Memorandum And Order Dec. 13, 1983.

Frantz, McConnell & Seymour, W. Morris Kizer, Knoxville, Tenn., for plaintiff.

McCord, Cockrill & Weaver, W. Keith McCord, Judy Cornett, Knoxville, Tenn., for defendants Fred R. Langley and Lick Fork Natural Resources Associates.

Herbert S. Moncier, Ann C. Short, Knoxville, Tenn., for Douglas R. Beaty.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

CLIVE W. BARE, Bankruptcy Judge.

The question before the court is whether a signatory of a note, signing in a representative capacity, may be compelled to answer questions pertaining to the corporation he represented when he executed the note. The signatory, an attorney, asserts that the information sought by the trustee is subject to an attorney-client privilege of both the corporation in question and a named individual. According to the trustee, the attorney-client privilege is inapplicable because the signatory was also the president of the corporation.

### I

On July 15, 1983, the trustee filed his complaint seeking enforcement of a promissory note dated October 1, 1982, in the amount of $428,604.53. The note, due and payable on November 1, 1982, reflects that the maker is Lick Fork, Ltd. However, it is signed "Lick Fork Natural Resources Associates by: Eastern Resources, Inc., General Partner by: Douglas R. Beaty, President."

In his complaint the trustee avers that defendant Lick Fork Natural Resources Associates is a partnership in which the general partners are defendants Fred R. Langley and Eastern Resources, Inc., a Tennessee corporation. As reflected in the caption of his complaint, the trustee believes that Lick Fork Natural Resources Associates and Eastern Resources, Inc. are the general partners of defendant Lick Fork, Ltd., a limited partnership. The trustee contends that the four defendants are jointly and severally liable for payment of the $428,604.53 promissory note.

Defendants Langley and Lick Fork Natural Resources Associates have filed a joint motion requesting either dismissal of the complaint or summary judgment. Among other defenses, Langley and Lick Fork Natural Resources Associates assert that Beaty was without either actual or apparent authority to sign the note on behalf of Lick Fork Natural Resources Associates; that Beaty's signature violated an express limitation of the partnership agreement between Langley and Eastern Resources, Inc. pertaining to one partner's authority to bind the partnership;[1] and that they neither received any proceeds nor other benefit through the execution of the note. By letter of September 8, 1983, the trustee's attorney advised the court it would be necessary to depose Beaty previous to responding to the joint motion to either dismiss or enter summary judgment.

During a discovery deposition of September 22, 1983, Beaty testified that he is a licensed attorney and that he has practiced law in Knoxville for approximately six years. He also testified that he was president of Eastern Resources, Inc. between January or February of 1982,[2] and that he so served at the request and on behalf of David Crabtree, a client. Although Beaty admits that he signed the note at issue, he testified that he does not know what authority Eastern Resources, Inc. had to execute the note.[3] He executed the note at the request of Crabtree and upon the advice of James Steiner, (president of the debtor)

1. Section 10.2 of a restated agreement of partnership between Langley and Eastern Resources, Inc. effective as of July 1, 1982, recites in material part: "The approval of a majority of the Partners entitled to vote shall be required in any matter affecting the Partnership or its business; provided, however, that (1) any Partner may take action for or bind the Partnership involving any contractual matter or obligation of the Partnership where the amount does not exceed $25,000 ...."

2. More specifically, Beaty testified that he became president of Eastern Resources, Inc. some

eight or nine months previous to his execution of the October 1, 1982, note.

3. Beaty is not presently a party defendant in this action. However, Tenn.Code Ann. § 47–3–404 (1979) enacts in part: "*Unauthorized signatures.*—(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

that the note represented a renewal of an existing obligation. (Beaty understood the obligation was that of Lick Fork Natural Resources Associates.) Beaty stated that he did not verify Steiner's representation and he does not know whether Steiner was correct.[4]

Beaty declined to answer questions pertaining to: information Crabtree furnished to him about the note; Crabtree's connection with Eastern Resources, Inc.; the identity of officers, directors, and shareholders of Eastern Resources, Inc. while he was president; assets of Eastern Resources, Inc. and who, other than himself, was authorized to sign checks on behalf of Eastern; his predecessor as president of Eastern Resources, Inc.; and the purpose of the loan.[5] His declination to disclose the information sought by the trustee is based upon his belief that the information is protected by the attorney-client privilege. According to Beaty, he has provided legal services for Crabtree and Eastern Resources, Inc. Indeed, he maintains that his service as president of Eastern Resources, Inc. was merely incidental to his legal representation of both Crabtree and Eastern Resources, Inc.

On October 25, 1983, the trustee filed a motion requesting an order to compel discovery. The trustee disputes the applicability of the attorney-client privilege with respect to his unanswered questions because Beaty served as an officer, not merely as attorney, for Eastern Resources, Inc.

**4.** See, however, Deposition of Douglas R. Beaty at 13 (September 22, 1983), where Beaty responds affirmatively to the question whether he knew the purpose of the loan.

**5.** See note 4, *supra*.

**6.** The Conference Committee Notes to H.R.Rep. 1597, 93rd Cong., First Sess., *reprinted in* Title 28, Federal Rules of Evidence, United States Code Annotated (1975) at 175–76, recite in part:

In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law. As Justice Jackson has said:

## II

The Federal Rules of Evidence are applicable in cases under the Bankruptcy Code. Bankruptcy Rule 9017. Fed.R.Evid. 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

In view of the Congressional Conference Committee Notes pertaining to this rule, the issue before the court is controlled by federal common law.[6] This conclusion, however, does not preclude consideration of Tennessee law.

Tenn.Code Ann. § 23–3–105 (1980) enacts:

*Privileged communications.*—No attorney, solicitor or counselor shall be permitted, in giving testimony against a client, or person who consulted him professional-

A federal court sitting in a nondiversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state. *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 471, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply.

ly, to disclose any communication made to him *as such* by such person, during the pendency of the suit, before or afterwards, to his injury. (Emphasis added.) This statute represents a codification of the common law attorney-client privilege. *Johnson v. Patterson,* 81 Tenn. 626, 649 (1884). Because it is an "obstacle to the investigation of the truth," the privilege must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *United States v. Pipkins,* 528 F.2d 559, 563 (5th Cir.1976), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *Prichard v. United States,* 181 F.2d 326, 328 (6th Cir.1950), *aff'd,* 339 U.S. 974, 70 S.Ct. 1029, 94 L.Ed. 1380 (1950). Furthermore, the burden of proof to establish the existence of the privilege rests upon the claimant. *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 25 (9th Cir.1981); *In re Blier Cedar Co., Inc.,* 10 B.R. 993 (Bkrtcy.D.Me.1981).

█ The general conditions precedent to the applicability of the attorney-client privilege were enumerated more than thirty years ago in *United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357 (D.Mass.1950).

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United Shoe,* 89 F.Supp. at 358–59.

Communications between an attorney and client of a business or personal nature, not involving legal advice, are outside the scope of the privilege. *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 324 (7th Cir.1963), *cert. denied,* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). The communication must involve confidential information furnished by the client. *Mead Data Cent., Inc. v. United States Dept. of Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977). Information learned from other sources is not privileged. *United States v. Aronoff,* 466 F.Supp. 855, 860 (S.D.N.Y.1979).

The conditions enumerated in *United Shoe* were refined in *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1978). Diversified was a defendant in a proceeding commenced by The Weatherhead Company (Weatherhead). Discovery of a memorandum and a subsequent written report prepared by a law firm for Diversified was sought by Weatherhead. Diversified objected to the discovery request on the basis that the documents were both within the scope of the attorney-client privilege and protected by the work product doctrine. After Judge Meredith affirmatively ordered Diversified to make the documents available to Weatherhead, Diversified applied to the Eighth Circuit Court of Appeals for a writ of mandamus. Reversing the decision of a three-member panel, the court sitting en banc concluded that the report, prepared after extensive confidential communications with Diversified employees, was privileged. The court determined that the communications of a corporate employee to an attorney are privileged if:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons, who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc. v. Meredith,* 572 F.2d at 609.

The test prescribed in *Diversified* has been endorsed in both *Union Planters Nat'l Bank v. ABC Records, Inc.*, 82 F.R.D. 472 (W.D. Tenn.1979),[7] and *Montclair Properties, Ltd. v. Lindsey, Bradley & Johnston, Inc.*, No. CA 422 (Tn.Ct.App. August 29, 1980).[8]

*Montclair Properties, Ltd.* is analogous to the instant case. Montclair, lessor, and Lindsey, Bradley & Johnston, Inc. (LBJ), lessee, were parties to a building lease. According to Montclair, William B. Tanner Company, Inc. (Tanner), as managing agent of LBJ, was responsible for the breach of the building lease. Montclair took the discovery deposition of Louis R. Lucas, a director, secretary of the board of directors, and general counsel for Tanner. Asserting an attorney-client privilege on behalf of Tanner, Lucas declined to answer numerous questions. After Montclair moved for an order compelling discovery, the chancellor ruled:

> [W]hen an attorney takes on the additional role as an officer of the corporation, whether it be a director or any of the enumerated offices such as president, vice president, secretary, treasurer, ... the corporation does not have a privilege to raise to restrain that attorney as an officer from answering questions propounded to him pertaining to the business affairs of the corporation. The foregoing being modified to the extent that where the attorney who is also an officer is in the process of representing the corporation in litigation the conversations and/or written memorandums or any other method of communication normally occurring between an attorney and his client will remain, and the corporation may raise the privilege of attorney-client in that factual situation only.

The Tennessee Court of Appeals found the chancellor's ruling too restrictive. Limiting the privilege only to cases in which the attorney-director/officer of the corporation was in the process of representing the corporation in litigation was too circumscribed. The appellate opinion recites:

> In each instance the communication sought to be protected must be examined in light of conditions then existing. For purposes of this examination we hold applicable the ... *United Shoe* test as restricted in *Diversified Industries* ... for application to corporate clients.

*Montclair Properties, Ltd.* at 6.

■ Questions pertaining to the validity of an asserted attorney-client privilege must be resolved on a case-by-case basis. *See Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The involvement of an attorney in the commercial endeavors of a corporation does not per se vitiate the attorney-client privilege. However, the participation of general counsel in the business of a corporation likewise does not automatically cloak the business activity with the protection of the attorney-client privilege. *See In re Grand Jury Subpoena*, 599 F.2d 504, 511 (2d Cir.1979); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 367 (D.Del.1975).

Beaty maintains that his disclosure of the information sought by the trustee would violate the attorney-client privilege of both David Crabtree and Eastern Resources, Inc. Hence, it is incumbent upon Beaty, Crabtree, or some other individual with authority to assert the privilege on behalf of Eastern Resources, Inc. to persuade this court that communications between Crabtree and Beaty satisfy the requirements of *United Shoe* and *Diversified Industries*.

### III

At the December 2, 1983, hearing on the trustee's motion to compel discovery Beaty was the sole witness. He testified that prior to becoming its president he acquired knowledge of facts pertaining to Eastern

---

7. The penultimate paragraph of the opinion recites: "The *Diversified Industries* test seems to be the best reasoned approach to the question of corporate client communications and the one which this Court believes would be adopted by the Tennessee Supreme Court." *Union Plant-* *ers Nat'l Bank v. ABC Records, Inc.*, 82 F.R.D. at 475.

8. This unreported decision was furnished by counsel for Beaty.

Resources, Inc. as a consequence of his legal representation of both Crabtree and Eastern Resources, Inc. Beaty considered the information communicated to him by Crabtree to be confidential; Crabtree made that very plain to him. Beaty further testified that his representation of Eastern Resources, Inc. was incidental to his representation of Crabtree, who decided that Eastern Resources, Inc. should be dissolved. Beaty became president of Eastern to facilitate its dissolution; he had no other duties as president, although he did execute some renewal notes. Crabtree reversed his decision to liquidate Eastern and so advised Beaty, who nonetheless continued as president of the corporation until his resignation in July 1983.[9] According to Beaty his knowledge of facts pertaining to Eastern Resources, Inc. was no greater at the time of his resignation than when he became corporate president in early 1982. He does not know the identity of the present shareholders or whether Eastern Resources, Inc. has any assets. Beaty did identify Kay Mills, a non-lawyer, as the secretary of Eastern Resources, Inc., but he believes that she has also resigned her corporate office. Significantly, Beaty conceded, without specificity, that not all of the communications pertinent to Eastern Resources, Inc. received from Crabtree involved requests for legal advice.

A letter dated December 2, 1983, from counsel for Crabtree to Beaty introduced at the hearing recites in material part:

> This is to advise that Mr. Crabtree has not and does not waive any attorney-client privilege with respect to any dealings between you and him and does request that you invoke the attorney-client privilege regarding all transactions and communications between you to the extent that privilege is applicable.

Although Beaty does not know whether Crabtree currently is an officer, director, or shareholder of Eastern Resources, Inc. he maintains that insofar as he knows Crab-

tree is the only individual with authority to waive the attorney-client privilege of the corporation. The only other exhibit introduced at the hearing is a letter of October 26, 1983, reflecting return of a copy of the trustee's motion by G. Wendell Thomas, Jr. to the attorneys for the trustee. The letter states that Thomas resigned as Eastern Resources' agent for service of process effective September 8, 1983. No new agent for service of process has been appointed.

■ The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.* Excusing Beaty from providing answers to the trustee's questions in this case will not advance the purpose for the privilege.

■ This court does not find any nexus between the need of Crabtree and Eastern Resources, Inc. for legal advice and the disclosure by Crabtree to Beaty of the assets, and names of directors, officers and shareholders of Eastern Resources, assuming the corporation was engaged in legitimate activities. Crabtree, the claimant of the privilege, has neither appeared personally in this action nor proffered his affidavit to support his privilege claim. He has failed to meet his burden of proof; he has not persuaded the court that the information he disclosed to Beaty was communicated for the purpose of securing either an opinion of law or legal advice. *United Shoe,* 89 F.Supp. 357. Consequently, the court finds that Beaty's knowledge of information pertaining both to the assets and the identities of directors, officers, and

---

**9.** The date Beaty was informed of Crabtree's decision not to dissolve Eastern Resources, Inc. is not included in the record.

shareholders of Eastern Resources, Inc. is discoverable by the trustee.

■ Furthermore, Beaty's deposition testimony supports a finding of waiver of the privilege with respect to the purpose of the loan. Beaty and Crabtree discussed the execution of the note in question in the presence of James Steiner, who brought the note, completed with the exception of the signature, to an office shared [10] by Beaty, Crabtree, and numerous corporations represented by Beaty.

Q You indicated that when the note came in by Mr. Steiner ... that you listened to some conversation of Mr. Steiner and/or Mr. Crabtree and concluded that the note should be signed in the fashion in which it is signed; is that correct?

A I think that I'm the one that insisted on that.

Q Do you know why, what there was, what you were being told that caused you to do it that way?

A No, I don't remember. I don't remember why that came up.

Q You don't recall that?

A No.

Q All right. Do you recall considering at the time whether this should be an obligation of Lick Fork, Limited or Lick Fork Natural Resources Associates?

A It seems to me that they kept telling me that I had to renew, we had to renew the note that Eastern signed as general partner, and I said, "That's the company that Eastern's a general partner of."

Deposition of Douglas R. Beaty at 90 (Sept. 22, 1983).

Because Steiner is apparently privy to information concerning the purpose of the loan, the information is not within the scope of the protection of the attorney-client privilege. Beaty must consequently disclose to the trustee any information he has material to the purpose of the note in question.

Although the reasons for these conclusions are heretofore given, the court, without imputing wrongdoing on the part of either Crabtree or officials of Eastern Resources, Inc., desires to make some additional observations. A genuine need exists for the information sought by the trustee. The books and records of Eastern Resources, Inc. have not been located by the trustee. Beaty is quite possibly the only individual source of information essential to the enforcement of a $428,604.53 note and identifiable by the trustee. Defendants Langley and Lick Fork Natural Resources Associates deny both liability for payment and the authority of Eastern Resources, Inc. to execute the note. Crabtree and Steiner each have asserted their Fifth Amendment privilege against self-incrimination in various legal proceedings. Absent clear evidence that the information sought by the trustee is within the scope of the attorney-client privilege, or otherwise nondiscoverable, the trustee should not be impeded in his discovery attempts.

The trustee's motion to compel discovery, filed on October 26, 1983, is GRANTED.

IT IS SO ORDERED.

## ADDENDUM TO MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

On December 12, 1983, the court's memorandum and order granting the trustee's motion to compel discovery was entered. Since the preparation of its memorandum and order the court has received and reviewed a slip opinion copy of the decision *In re Grand Jury Proceedings—Gordon*, No. 83–3243, 722 F.2d 303 (6th Cir. Dec. 5, 1983). Gordon, an attorney, appeared before a federal grand jury investigating possible violations of the Internal Revenue Code by Reu-

---

**10.** See *United States v. Vehicular Parking*, 52 F.Supp. 751 (D.Del.1943) involving a claim of attorney-client privilege by the primary defendant in an antitrust action. This primary defendant and its attorney shared the same suite in a Washington, D.C. office. The court found that the privilege was inapplicable since the attorney, also a director, promoter, and one of the general business managers of the primary defendant, served in a nonadvocate, nonlegal capacity.

ben Sturman and "several alleged corporate facades" within his control. *Id.* at 305. Gordon acknowledged to the grand jury that Sturman was a client of his firm; he also identified twelve corporations incorporated by his firm. However, invoking the attorney-client privilege, Gordon declined to answer questions seeking information concerning the *de jure* corporate status of the corporations under Sturman's control. The United States petitioned the district court for an order compelling Gordon to to identify the person or persons who: (i) requested each incorporation; (ii) furnished his law firm with information identifying the officers and shareholders of each corporation; (iii) dealt with his law firm when legal matters arose concerning each of the corporations in question; (iv) requested and/or received from his law firm custody of the records of each corporation. Asserting he was the individual the United States was attempting to identify through interrogation of Gordon, "John Doe" filed a motion to intervene. The motion was granted on the basis of the intervenor's attorney-client privilege claim, after an *in camera* review of his affidavit. When the district court granted the government's motion to compel discovery, the intervenor appealed.

After determining that its appellate jurisdiction had been properly invoked, the circuit court observed that the general nature of legal services performed is not privileged and that identifying the person(s) requesting incorporation would not be tantamount to disclosing a confidential communication. In discussing the inquiry pertaining to the identity of the individual who had disclosed the identities of corporate officers and shareholders to Gordon's law firm, the opinion recites:

> Inquiry # 2 seeks to have Gordon disclose the name of the individual who conveyed to Gordon the identity of the officers and shareholders of the various corporations. *The names of shareholders and officers "are clearly a matter of corporate record [and] are not normally the kind of confidential information which is subject to the attorney-client privilege."* United States v. Mackey, *supra* at 859. Inasmuch as the substance of the communication was not confidential, revelation of the identity of the individual who supplied the names of the corporate officers to Gordon cannot amount to disclosure of a confidential communication. Therefore, question # 2 does not seek privileged information and should be answered. (Emphasis added.) [1]

*In re Grand Jury Proceedings—Gordon,* slip op. at 8–9.

 The trustee in the instant case seeks information from Beaty pertaining to the identities of former officers and shareholders of Eastern Resources, Inc. The information sought is outside the scope of confidential information ordinarily protected by a corporation's attorney-client privilege and is discoverable by the trustee.

---

1. *United States v. Mackey,* 405 F.Supp. 854 (E.D.N.Y.1975) involved a renewed attempt by defendants to obtain a dismissal of indictments after a jury verdict against them. The defendants contended that Mackey's attorney-client privilege was violated when his attorney testified before a grand jury about the incorporation of certain business entities. Because the court in *Mackey* concluded that dismissal of the indictments was not warranted as a remedy for violation of Mackey's attorney-client privilege, the court assumed without deciding that the information disclosed was within the privilege. There was overwhelming evidence of the commission of mail fraud presented to the grand jury apart from the testimony of Mackey's former attorney.