**Steven J. HATFILL, Plaintiff,**

v.

**THE NEW YORK TIMES COMPANY, Defendant.**

**Civ.A. No. 1:04CV807CMHLO.**

United States District Court,
E.D. Virginia.
Alexandria Division.

Oct. 20, 2006.

Patrick Pearse O'Donnell, Thomas Gerard Connolly, Harris Wiltshire & Grannis LLP, Washington, DC, for Plaintiff.

Jay Ward Brown, John Bernard O'Keefe, Levine Sullivan Koch & Schulz LLP, Washington, DC, for Defendant.

R. Joseph Sher, United States Attorney's Office, Alexandria, VA, for Interested Party.

## ORDER

O'GRADY, United States Magistrate Judge.

Upon consideration of the pleadings and for good cause shown, it is

ORDERED that Plaintiff's Motion to Compel the Identity of Defendant's Confidential Sources (Dkt. 83) is GRANTED. Plaintiff has brought this defamation action against Defendant, after Defendant published a series of columns alleging that Plaintiff was involved in the anthrax attacks which killed five people in 2001. Pursuant to 28 U.S.C. § 1332, this action comes to this Court under its diversity jurisdiction. On July 13, 2006, Plaintiff deposed Nicholas Kristof, the author of the columns published by Defendant. During that deposition, Plaintiff questioned Mr. Kristof about his sources for the columns and Mr. Kristof refused to identify five sources, whom he had promised confidentiality.[1]

Confidential Sources #2 and #3 were identified during Kristof's deposition as employees of the F.B.I. directly involved in the government's anthrax investigation. These sources provided Mr. Kristof with information or confirmed existing information regarding Plaintiff's ability to manufacture anthrax, the belief that Plaintiff had access to an isolated residence, and Plaintiff's results from polygraph tests. Confidential Source #4 was a colleague or perhaps a friend of Plaintiff's who provided Mr. Kristof with his opinion about Plaintiff's patriotism.

Plaintiff contends that his ability to question Mr. Kristof's sources is central to establishing Defendant's degree of fault for publishing the columns about Plaintiff.[2] Plaintiff urges the Court to apply Virginia law to this dispute and thus apply a balancing test to determine whether Mr. Kristof should be entitled to a qualified reporter's privilege. Plaintiff argues that direct examination of these sources will provide evidence regarding the reliability of the information, sources' areas of knowledge and any potential biases, overcoming any reporter's privilege under the balancing test.

Defendant argues that a choice-of-law analysis under Federal Rule of Evidence 501 reveals that New York or Maryland law, rather than Virginia, should govern the claim of privilege and thus, as a reporter, Mr. Kristof's sources are absolutely privileged under either Maryland or New York reporter "shield" statutes.

---

1. At the time Plaintiff filed his Motion to Compel, Mr. Kristof was withholding the identities of five sources. Since the motion was filed, two of those sources, Confidential Sources #1 and #5, have agreed to release Mr. Kristof from his promise and reveal their identities. Thus, only Confidential Sources #2, #3 and #4 remain the subject of this motion.

2. The parties disagree on whether Plaintiff is a public figure, requiring him to prove actual malice by Defendant, or not a public figure, requiring him to prove only negligence by Defendant.

## A. Applicable Law

In diversity cases, privileges are determined according to the state law that supplies the rule of decision. *See* Fed. R.Evid. 501. Thus, in diversity cases, Rule 501 directs the Court to apply state law, including state conflict-of-law provisions, to the law of privilege. This approach is consistent with the Supreme Court's holding in *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that under the *Erie* doctrine, a federal court must apply the forum's conflict-of-law rules). The Fourth Circuit has not specifically ruled on the meaning of the second sentence of Rule 501. However, when analyzing Rule 501 in the diversity context, other courts have applied the conflict-of-law doctrines of the state in which it sits. *See, e.g., Samuelson v. Susen*, 576 F.2d 546, 550–51 (3rd Cir.1978) (applying Pennsylvania's conflict-of-law rules to determine whether Ohio's or Pennsylvania's privilege law applies); *Ghana Supply Commission v. New England Power Co.*, 83 F.R.D. 586, 589 (D.Mass.1979)(applying the conflict laws of Massachusetts, the forum state); *Union Planters Nat'l Bank v. ABC Records, Inc.*, 82 F.R.D. 472, 473 (W.D.Tenn.1979). Therefore, since this Court sits in the Commonwealth of Virginia, the Court finds that Virginia law, including Virginia conflicts-of-law, applies to this issue.

Virginia is a traditional state. As a result, "[i]t is well settled that Virginia ... adheres to traditional conflict-of-law rules, when presented with a choice-of-

law question." *Clark v. Clark*, 398 S.E.2d 82, 89 (Va.Ct.App.1990). "[T]he *lex loci* will govern as to all matters going to the basis of right of action itself, while the *lex fori* controls all that is connected merely with the remedy." *Jones v. Jones*, 246 Va. 3, 431 S.E.2d 33, 34 (1993) In more modern parlance, "Virginia courts are to determine whether an issue is procedural [*lex fori* ] or substantive [*lex loci* ] according to its own conflict rules. If the issue is deemed procedural under the conflict of law rules, the court shall apply its rules and procedure." *Clark*, 398 S.E.2d at 89. Further, on the issue of conflicts, Virginia has explicitly rejected any of the more recent approaches, including the approach advocated by the Restatement (Second) of Conflicts of Laws. *See McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662, 664 (1979).

The Virginia courts have not spoken specifically on the issue of whether the law of privilege is procedural or substantive. They have, however, provided guidance on how a Virginia court would classify the law of privilege, if it had the opportunity to consider the issue. In Virginia, "the best rule seems to be that the rights of the parties with respect to their causes of action are governed by *lex loci*, while the admissibility of evidence and the enforcement of those rights are governed by the *lex fori*." *Baise v. Warren*, 158 Va. 505, 164 S.E. 655, 656 (1932).[3] Further, the Virginia court has stated that "all questions of procedure, burden of proof and sufficiency of evidence" are considered procedural. *Vicars v. Atlantic Discount Co., Inc.*, 205 Va. 934, 140 S.E.2d 667, 670 (1965). Thus, it appears to this Court that the reporter's privilege, a common law privilege under Virginia law, is a question

---

**3.** Defendant contends that granting this motion will strip Mr. Kristof of his right to protect his sources. As first glance, such a "right" might make it appear as though the reporter's privilege should be governed by *lex loci*. However, the Virginia rule seems to

only consider the "rights of the parties with respect to their causes of action" and Mr. Kristof is only a third-party to this dispute. Thus, the existence or lack thereof of a third-party's rights are not a substantive issue under Virginia choice-of-law rules.

of evidence.[4] Thus, this Court finds the law of privilege, absent an applicable statute, is governed by procedural or *lex fori* rules[5] and would therefore apply the Virginia common law regarding the reporter's privilege. The Court also takes note that Virginia would not be the only state to treat this type of privilege as procedural[6]

## B. Reporter's Privilege under Virginia Law

▉ Under Virginia law, reporters have a qualified privilege against disclosure of confidential sources in public figure defa-

mation cases. *See Philip Morris Companies, Inc. v. American Broadcasting Companies, Inc.,* 1995 WL 301428 (Va. Cir. Ct.1995). Per the guidance of *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Virginia court found that it must balance the interests involved when compelling the identification of confidential sources. *Id.* In doing so, the Virginia courts have applied the three-part balancing test adopted by the Fourth Circuit in *LaRouche v. National Broadcasting Co., Inc.,* 780 F.2d 1134 (4th Cir. 1986). *See Philip Morris,* 1995 WL

4. Defendant contends that the law of privilege should be treated as substantive and provides *McCauley v. Purdue Pharma, L.P.,* 224 F.Supp.2d 1066 (W.D.Va.2002) as its support. While the federal court in *McCauley* did find that the physician-patient privilege was substantive under Virginia choice-of-law rules, this case is distinguishable. First, the court states that the Virginia physician-patient privilege did not exist under state common law and was enacted as a qualified statutory privilege, under Va Code Ann. § 8.01–399. The *McCauley* court also noted that the "Virginia Supreme Court has held that this statute not only sets out a rule of evidence, but it also provides grounds for a cause of action against any practitioner who discloses a patient's medical records in violation of it." *Id.* at 1068.

Virginia has not enacted a statutory privilege related to the reporter's privilege, nor has the Virginia General Assembly created a cause of action against a reporter who discloses a source's identity. Further, Virginia has developed common law related to a qualified privilege for reporters. *See Philip Morris Companies, Inc. v. American Broadcasting Companies,* 1995 WL 301428 (Va.Cir.Ct. 1995). Thus, Court finds *McCauley* unpersuasive.

5. A leading treatise on federal practice and procedure also reports that this decision conforms with the older, or more traditional, choice-of-law rules. "[T]he older view was that evidence was procedural and fell, therefore, within the principle that matters of procedure were governed by the law of the forum. The original Restatement had no provision dealing with privileges; apparently

they were to be dealt with under the rule that in matters of evidence the law of forum governs. Though this approach has been criticized, it seems defensible if one views privileges as a restriction on the power of the courts to compel testimony.... [T]here is no reason why the local court should have its power to elicit evidence curtailed because another state has decided to limit the power of its courts and the evidence sought has some connection with the state." State Law Proviso–Choice of Law, 23 Fed. Prac. & Proc. Evid. § 5435 (2006).

6. In *Union Planters National Bank of Memphis v. ABC Records, Inc.,* the federal court, in a diversity action, followed Rule 501 and used Tennessee choice-of-law rules to determine whether to apply Tennessee or California law to the issue of attorney-client privilege. 82 F.R.D. 472 (W.D.Tenn.1979). The court decided that Tennessee would "hold that in the present situation the attorney-client privilege is a question of evidence and that in determining the scope and validity of the privilege the law of Tennessee would govern." *Id.* at 473. Although Tennessee had embodied its common law rule of attorney-client privilege in a statute, the legislature concerned themselves only with matters of evidence and did not create a cause of action. Therefore, the federal court found this statute to be a matter of procedural law under the Tennessee choice-of-law rules. *See also Ghana Supply Commission v. New England Power Co.,* 83 F.R.D. 586, 589 (D.Mass.1979) (looking to the conflicts law of the forum state and holding that questions of privilege are procedural under Massachusetts law).

301428 at *6; *see also Clemente v. Clemente,* 56 Va. Cir. 530, 2001 WL 1486150 (Va. Cir. Ct.2001).

▮ Under the *LaRouche* test, the court considers: "(1) whether the information is relevant, (2) whether the information can be obtained by alternate means, and (3) whether there is a compelling interest in the information." *LaRouche,* 780 F.2d at 1139. Applying the facts of this case to the *LaRouche* test, the Court finds that the balance tips in favor of disclosure.

In *Philip Morris,* the Virginia court found that information about the confidential source is relevant to the state of mind of the reporter at the time the reporter made the allegedly defamatory statements as well as relevant to the credibility of published statements resulting from information provided by the source. *Id.* at *8. Here, Defendant has asserted that it acted without the requisite intent. In order for Plaintiff to meet its burden in the defamation case and offer evidence as to the reporter's state of mind, Plaintiff needs an opportunity to question the confidential sources and determine if Mr. Kristof accurately reported information the sources provided. Further, Plaintiff contends that there is some question as to the accuracy of Mr. Kristof's reporting. Plaintiff has deposed a formerly confidential source, Dr. Barbara Rosenberg, and discovered that her testimony contradicts Mr. Kristof's testimony regarding what Dr. Rosenberg told him. In addition, Defendant contends that Confidential Source # 4's information is not relevant because the source said primarily positive things about Plaintiff. If this is true and these statements were left out of the article or if Confidential Source # 4 made statements which cast doubt on Kristof's allegation that Plaintiff was the anthrax mailer, then the information from Confidential Source # 4 is relevant to Plaintiff's case. As Plaintiff needs to acquire a full understanding of Mr. Kristof's state of mind and verify the accuracy of the statements from the confidential sources, the information is central to this dispute and thus relevant under the *LaRouche* test.

Plaintiff contends that it can not determine the identities of the confidential sources through alternate means, because Mr. Kristof has not provided enough identifying information. For example, although Plaintiff knows that Confidential Sources # 2 and # 3 are employees of the F.B.I., hundreds of agents and employees of the F.B.I. have worked on the anthrax investigation. Thus, Plaintiff argues that deposing all of these individuals to determine which two are the confidential sources would be impossible. In addition, Plaintiff has served a Rule 30(b)(6) deposition on Defendant asking for a representative who knows the identities of the sources, and Defendant has only identified Mr. Kristof. Thus, the Court is in agreement with Plaintiff that this information is not available by means other than compelled disclosure.

The final part of the *LaRouche* test considers whether there is a compelling interest in the information. Defendant argues that Plaintiff's interest has not ripened into a "compelling" one since Defendant has not placed either the information provided by the sources or the sources themselves at issue. Thus, Defendant argues that determination of the issue should be deferred until such time as the record of Plaintiff's need is more fully developed. The close of discovery is pending. Under Defendant's view when Defendant decides to put the confidential sources or their information at issue, then the Court would need to reopen discovery to allow Plaintiff time depose the confidential sources. This is not an acceptable solution. Rather, as demanded by *Branzburg,* the Court must make a case-by-case analysis of the needs of the plaintiff. 408 U.S. 665, 92 S.Ct.

2646 (1972). In this case, the Court finds that even if Defendant does not place the confidential sources or their information at issue, Plaintiff may need to do so in order to effectively prove his case.

The Court understands the need for a reporter to be able to credibly pledge confidentiality to his sources. Confidential sources have been an important part of journalism, which is presumably why Virginia recognizes a qualified reporter's privilege in the first place. But that privilege must be balanced against the rights of a plaintiff and in Virginia, this balance is embodied by the *LaRouche* test. Thus, after balancing the burdens to both sides, the Court finds that the balance favors disclosure. Thus, it is

ORDERED that Defendant shall reveal the identity of Confidential Sources # 2, # 3 and # 4, to Plaintiff no later than Wednesday, October 25, 2006.