Jesse E. YORK, Allen F. Long, Darrell A. Mitchell, David M. Hoover, Michael S. Long, and Johnny E. Long, Plaintiffs–Appellees,

v.

Otto PURKEY, Individually and in his official capacity as Sheriff of Hamblen County, Defendant–Appellant.

No. 00–5650.

United States Court of Appeals, Sixth Circuit.

July 20, 2001.

Before SILER and GILMAN, Circuit Judges; Gibbons, District Judge.*

SILER, Circuit Judge.

Pursuant to 42 U.S.C. § 1983, plaintiffs Jesse York, Allen Long, Darrell Mitchell, David Hoover, Michael Long, and Johnny Long filed suit against defendant Otto Purkey, alleging that Purkey violated their First and Fourteenth Amendment rights by firing them from their jobs in retaliation for their political support of his political opponent. Purkey filed a motion to dismiss plaintiffs' causes of action on the grounds that he was entitled to qualified immunity and that he relied upon the legal advice of counsel when he terminated the plaintiffs. The district court treated Purkey's motion as a motion for summary judgment and denied summary judgment in regard to all plaintiffs' claims except Hoover's. Purkey appeals the denial of qualified immunity. We affirm.

I. Background

Prior to September 1998, the plaintiffs were employed in Tennessee by the Hamblen County Sheriff's Department ("Department") under Sheriff Charles Long. York worked as a deputy sheriff. Allen Long, Sheriff Long's brother, supervised inmate labor during litter pickup. Mitchell served as a litter truck driver. Hoover worked as a detective. Michael Long, Sheriff Long's son, worked as a drug force detective. And Johnny Long, Sheriff Long's brother, worked as a jailer.

In 1998, defendant Purkey defeated incumbent Charles Long in an election for Hamblen County Sheriff. The plaintiffs

had supported and worked for Sheriff Long's reelection. After Purkey took office as Sheriff of Hamblen County in September 1998, he terminated each plaintiff's employment with the Department.

Before terminating the plaintiffs, Purkey sought out and received general legal advice concerning his ability to terminate employees from the Hamblen County Attorney, Rusty Cantwell. Purkey never told Cantwell which employees he wanted to terminate. As Cantwell recalls, he gave the following advice to Purkey: "I told him that Tennessee was an employment-at-will state, which basically meant, generally meant, that no one has a vested interest in a job, that they can be terminated without cause, that he would not need reason.... I told him a limitation on that was you can't fire people in violation of their civil rights." Cantwell said that they did not discuss what he meant by "civil rights" in any great detail, but that he may have mentioned "First Amendment rights" and "may have discussed ... retaliatory discharges."

Pursuant to 42 U.S.C. § 1983, plaintiffs filed suit in the Eastern District of Tennessee against Purkey individually and in his official capacity. They alleged that Purkey violated their First and Fourteenth Amendment rights by dismissing them from their jobs as employees of the Department in retaliation for their political support of Purkey's campaign opponent, former Sheriff Long. Purkey filed a motion to dismiss the plaintiffs' causes of action on the grounds that he was entitled to qualified immunity and had relied upon the legal advice of Cantwell when he terminated the plaintiffs.

Because Purkey's motion to dismiss relied upon evidence outside of the plead-

---

* The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

ings, the district court treated his motion to dismiss as a motion for summary judgment. The court found that all plaintiffs except Hoover had established *prima facie* cases of patronage dismissal. Furthermore, it held that Purkey was not entitled to qualified immunity in regard to the remaining plaintiffs' retaliation claims. Because Purkey did not provide Cantwell with all relevant information, the district court also held that any potential violations of plaintiffs' rights by Purkey were not excused by his reliance upon Cantwell's legal advice. Accordingly, summary judgment was granted in regard to Hoover and was denied in regard to all other plaintiffs.

## II.  Jurisdiction

A district court's denial of a summary judgment motion based on qualified immunity is an immediately appealable final decision. *See Mattox v. City of Forest Park,* 183 F.3d 515, 518 (6th Cir.1999) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). But "'a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.'" *Flagner v. Wilkinson,* 241 F.3d 475, 480 (6th Cir.2001) (quoting *Johnson v. Jones,* 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). On interlocutory appeal of a denial of summary judgment based on qualified immunity, we have jurisdiction over questions of law but not over questions of fact. *See McCloud v. Testa,* 97 F.3d 1536, 1544–45, 1556 (6th Cir.1996).

## III.  Discussion

Purkey contends that he was entitled to summary judgment in regard to all plaintiffs' claims because he was entitled to qualified immunity. We disagree.

A district court's denial of summary judgment on grounds of qualified immunity is reviewed de novo because that doctrine's application is a question of law. *See Testa,* 97 F.3d at 1541. When the law is unclear, public officials performing discretionary functions are entitled to qualified immunity in their individual capacities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine that a constitutional right is clearly established, a district court in the Sixth Circuit must usually rely upon binding precedent from the Supreme Court, the Sixth Circuit, or itself. *See Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

The Supreme Court first addressed patronage dismissal of public employees in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *Elrod,* a plurality opinion, promulgated the general rule "that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments." *Id.* at 373. That same opinion, however, created an exception to the general rule. "Justice Brennan wrote that '[l]imiting patronage dismissals to policymaking positions is sufficient to achieve' the valid governmental objective of preventing holdover employees from undermining the ability of a new administration to implement its policies." *Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997) (quoting *Elrod,* 427 U.S. at 367).

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court revisited the scope of First Amendment protection against politically motivated discharge. Now speaking through a majority, the court stated that to properly assess whether an employee may be summarily dismissed based on political affiliation, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the

public office involved." *Id.* at 518. In making such an assessment, the court "must look beyond the mere job title and examine the actual duties of the specific position." *Hall,* 128 F.3d at 423.

It is not necessary for courts to have previously designated a particular job as "political" in order to hold officials personally liable for partisan employment actions related to that job. *Id.* at 429. *Branti* requires this court to invoke case-by-case analysis to determine whether political affiliation is an appropriate consideration when staffing a particular job. *See id.* at 427. Case-by-case analysis of state and local law is used to determine whether a position falls within the *Branti* exception. *See id.* at 427–29 (applying such analysis to the position of deputy sheriff in a Tennessee county). *See also Sowards v. Loudon County,* 203 F.3d 426, 439 (6th Cir.2000) ("Because the duties of a jailer may vary from state to state, it is important to examine the applicable state and local law when deciding whether political considerations may be used in employment decisions concerning a jailer."). Therefore, in deciding whether law was clearly established for the purpose of qualified immunity, we look for decisions that involve positions with the same or similar statutory duties. *Id.*

In *McCloud v. Testa,* 97 F.3d 1536, 1554–55 (6th Cir.1996), this court listed specific jobs that the Supreme Court and the Sixth Circuit have determined to be ineligible for the *Branti* exception. Additionally, *Testa* created a systematic approach for district courts to follow in patronage cases to determine whether political affiliation is an appropriate element of personnel decisions. *See id.* at 1557.

■ The amount of information about a job that is available in the record is important. Where the record contains abundant information about a job, courts should re-solve any ambiguity about the classification of that particular position in favor of the government defendants for the purposes of qualified immunity. *Hall,* 128 F.3d at 429. But where the record contains scant information about the functions of a job, and the parties have not cited any helpful law, we have upheld a district court's denial of summary judgment for a defendant. *See Testa,* 97 F.3d at 1560–61. By affirming denial of summary judgment in such cases, we are not finding that there is no qualified immunity. Rather, we are "merely holding that we cannot answer this question with sufficient confidence, given uncertainties about the facts and the absence of any citations to state or county law, to reverse the district court's refusal to grant summary judgment on grounds of qualified immunity." *Id.* Further proof is needed to determine the nature of these jobs before the court can determine the role that political affiliation can play. *See id.*

■ Purkey does not specify the grounds upon which he is entitled to qualified immunity. He never disputes that, in general, it is clearly established that the practice of patronage dismissals is unconstitutional. Furthermore, he never argues the *Branti* exception. He fails to analyze the jobs at issue and offers no citations to state or county law to assist this court's evaluation of those jobs. Thus, we reject Purkey's qualified immunity defense because the record does not contain enough information, factual or statutory, about the jobs in question for us to evaluate those jobs under *Branti* and *Testa.* Additionally, the little information that is available about the plaintiffs' jobs argues against qualified immunity. Based on the scant record before it, the district court did not err by rejecting Purkey's qualified immunity defense.

Purkey further contends that he was entitled to summary judgment because he relied upon Cantwell's legal advice when he terminated the plaintiffs. His argument is without merit.

While we have previously never analyzed whether a defendant's reliance on the advice of counsel supports qualified immunity, we have recognized that there are circumstances in which reliance on the advice of counsel may support a claim of qualified immunity. *See Mineer v. Call,* 993 F.2d 1547, No. 92–5368, 1993 WL 144536, at \*6 (6th Cir.1993) (unpublished) (citing *V–1 Oil Co. v. Wyoming,* 902 F.2d 1482 (10th Cir.1990)). These circumstances must be "extraordinary."

In *Harlow,* 457 U.S. at 818–19, the Supreme Court created an "extraordinary circumstances" exception that entitles a defendant to qualified immunity even where he or she is otherwise not entitled to it. The Court wrote:

> If the law was clearly established, the [qualified] immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Id.* A defendant government official will often claim that reliance on legal advice constitutes an "extraordinary circumstance" under *Harlow. See V–1,* 902 F.2d at 1488. Where that claim is made, the "defendant bears the burden of proving such circumstances." *Id.*

The "extraordinary circumstances" exception applies only rarely. The Tenth Circuit has stated that:

> The circumstance most often considered for treatment as "extraordinary" is reli-

ance upon the advice of counsel. Of course, such reliance is not inherently extraordinary, for few things in government are more common than the receipt of legal advice. Still, reliance on the advice of counsel in certain circumstances rises to the level of extraordinary circumstances.

*Id.* And the Fourth Circuit has written that "although reliance on counsel's advice may indeed be a factor to be considered in deciding whether a defendant has demonstrated an 'extraordinary circumstance,' reliance on legal advice *alone* does not, in and of itself, constitute an 'extraordinary circumstance' sufficient to prove entitlement to the exception to the general *Harlow* rule." *Buonocore v. Harris,* 134 F.3d 245, 253 (4th Cir.1998).

■ When determining whether reliance upon the advice of counsel constitutes an "extraordinary circumstance," other circuits look to the individual circumstances of each case and consider relevant factors. Obviously, "[a] public official who *fails to follow* legal advice . . . cannot rely on that advice to establish entitlement to qualified immunity." *Buonocore,* 134 F.3d at 253. But where a public official follows legal advice, four factors have been considered: 1) whether the advice was unequivocal and specifically tailored to the particular facts giving rise to the controversy; 2) whether complete information was provided to the advising attorney(s); 3) the prominence and competence of the advising attorney(s); and 4) how soon after the advice was received the disputed action was taken. *V–1,* 134 F.3d at 1489.

■ Purkey's reliance upon Cantwell's legal advice does not constitute an extraordinary circumstance that absolves him of liability. First, it appears that Purkey did not follow Cantwell's legal advice. Cantwell told Purkey that he could not terminate employees in violation of their civil

rights and, if Purkey retaliated against the plaintiffs because they exercised their First Amendment rights, then Purkey did not follow Cantwell's advice. And, second, Purkey could not rely on Cantwell's advice because he failed to provide Cantwell with complete information. He did not tell Cantwell which employees were to be fired and, as a result, Cantwell was unable to assess whether political affiliation was an appropriate consideration for jobs held by those employees. Any advice that Cantwell provided was in response to incomplete information and, accordingly, was not "specifically tailored to the particular facts giving rise" to the plaintiffs' claims against Purkey. Thus, despite his alleged reliance upon Cantwell's advice, the district court did not err in denying Purkey's summary judgment motion.

AFFIRMED.