Marilyn JOHNSON, et al., Plaintiff,

v.

CITY OF MEMPHIS, Defendant.

No. 00–2608 DV.

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 7, 2005.

Earle J. Schwarz, Glankler Brown, PLLC, David M. Sullivan, Esq., Law Offices of David M. Sullivan, Jeffery Atchley, Norwood Howard & Atchley, Kathleen L. Caldwell, Law Office of Kathleen L. Caldwell, Gregory D. Cotton, Cotton Law Firm, Memphis, TN, for Plaintiffs.

Delaine R. Smith, Keith R. Thomas, Louis P. Britt, III, Ford & Harrison, LLP, Ricky E. Wilkins, Law Office of Ricky E. Wilkins, Robert L.J. Spence, Jr., Spence Law Firm, PLLC, Sara L. Hall, City Attorney's Office, Andrea M. Lazarini, Spicer Flynn & Rudstrom, Clyde W. Keenan, Keenan Dabbous & Weiss, Memphis, TN, for Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DONALD, District Judge.

Before the Court is Plaintiffs' motion for partial summary judgment as to the disparate impact resulting from Defendant's use of the written test in the 2000 sergeant promotion process and the disparate impact of the promotion tests and procedures of the 2003 sergeant promotion process, both in violation of Title VII, 42 U.S.C. § 2000e. Plaintiffs seek partial summary judgment on the limited issues of whether 1) the 2000 written test component of the sergeant promotions process resulted in a disparate impact on African Americans in violation of 42 U.S.C. § 2000e; 2) Defendant is able to offer evidence that the test was job-related or consistent with business necessity; and 3) the promotional process employed by Defendant in the 2003 sergeant promotions resulted in disparate impact for African–American police officers, in violation of 42 U.S.C. § 2000e. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334. For the following reasons, the Court **GRANTS** Plaintiffs' motion for partial summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted if no genuine issue of material fact exists,

and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those facts which are defined by substantive law and are necessary in order to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

In evaluating a motion for summary judgment, the evidence, facts, and any inferences must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility,* 150 F.3d 584, 588 (6th Cir.1998). Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Promotional Process for 2000*

Plaintiffs Marilyn Johnson and Phillip Jackson are African–American police officers who were denied promotions to sergeant based in part on a test administered by Defendant. The promotional process Defendant used originally included four factors: a written test, a practical test, performance evaluations, and seniority. Those passing the written test were then required to take the practical test. Finally, Defendant would consider performance evaluations and seniority. Each of the four factors would be weighted to calculate a total score. The weights assigned to the factors were: 20 percent for the written test, 50 percent for the practical test, 20 percent for performance evaluations, and 10 percent for seniority.

In scoring the written test, Defendant first applied a "cut score" of 70. Those making a score of 70 or above were considered to have passed the exam; candidates with scores below 70 were not permitted to move to the next step of the promotional process. However, when Defendant applied the cut score of 70, it resulted in disparate impact to African–American candidates. Therefore, Defendant adjusted the cut score to 66. As such, anyone scoring 66 or higher was considered to have passed the written test and was allowed to continue in the promotional process by taking the practical test. The 66 and above score was determined to be the score needed to ensure that the results satisfied the Equal Employment Opportunity Commission's ("EEOC") four-fifths rule.[1]

The second step was the practical test. However, during the administration of the practical test, Defendant discovered that study materials had been leaked to certain applicants. In response, Defendant eliminated the practical test entirely and relied on the written test, performance evaluations, and seniority to make its promotional decisions. Thus, the weight distribution

---

1. To determine whether scores satisfy the four-fifths rule: first, a passing rate for African Americans is calculated by dividing the number of African Americans passing the test by the total number of African Americans who took the test. The same is done for white candidates. The passing rate for African Americans is then divided by the passing rate for white candidates to get a selection rate. If the selection rate is below eighty percent, the cut score results in adverse impact under the EEOC's four-fifths rule.

among each of the three remaining factors was adjusted to allow for the elimination of the practical test. As such, the weight assigned to the written test went from 20 percent to 45 percent, as did the weight assigned to performance evaluations. Based on the three factors, Defendant promoted the top 63 candidates. African–American patrol officers who had been denied promotions then filed this suit, alleging discrimination pursuant to 42 U.S.C. §§ 1981 and 1983, Tenn.CodeAnn. § 4–21–401, the Fourteenth Amendment's equal protection clause, city ordinances, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Plaintiffs filed the instant motion for partial summary judgment with respect to their claim for disparate impact under Title VII.

### B. *Promotional Process for 2003*

Because of the long history of difficulties with discriminatory promotional practices, Defendant took great pains to ensure that the 2003 test it employed was job-specific and tested the skills required for the position of sergeant. Defendant hired a consultant, Dr. P. Richard Jeanneret of Jeanneret and Associates, to create such a test. Following the test, the Defendant learned that the test had a significant disparate impact on African Americans seeking promotion to sergeant, in spite of the efforts made to avoid such a result. However, Defendant relied on the test and promoted accordingly, thus disproportionately promoting whites to sergeant positions. African–American patrol officers who had been denied promotions then filed this suit, alleging discrimination pursuant to 42 U.S.C. §§ 1981 and 1983, Tenn.Code Ann. § 4–21–401, the Fourteenth Amendment's equal protection clause, city ordinances, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Plaintiffs filed the instant motion for partial summary judgment with respect to their claim for disparate impact under Title VII.

## III. ANALYSIS

■ Plaintiffs allege that the 2000 and 2003 written tests were discriminatory in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, which states in pertinent part:

(a) Employer practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2. Such discriminatory practices may include an employer's testing procedures used in promotions. *See, e.g., Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). The statute goes on to explain the shifting burden:

(k) Burden of proof in disparate impact cases

(1)(A) An unlawful employment practice based on disparate impact is established under this subchapter only if—

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

42 U.S.C. § 2000e–2.

■ In *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158

(1971), the United States Supreme Court held that Title VII forbids the use of testing that results in a discriminatory effect, regardless of intent, unless the employer meets "the burden of showing that any given requirement (has) . . . a manifest relationship to the employment in question." *Id.* at 432, 91 S.Ct. 849. The employer's burden only arises after the plaintiff has made out a prima facie case of discrimination. To do that, the plaintiff must show that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If an employer then meets the burden of proving that its tests are job related, the plaintiff then has the opportunity to show that other tests, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in "efficient and trustworthy workmanship." *Id.* at 801, 93 S.Ct. 1817. Such a showing would be evidence that the employer was using its tests merely as a "pretext" for discrimination. *Id.* at 804–805, 93 S.Ct. 1817. Thus, to prevail on their Title VII claim, Plaintiffs must first make out a prima facie case that the tests employed by the Defendant for promotions had a disparate impact on African–American police officers.

### A. *Promotional Process for 2000*

Defendant argues that, as to the 2000 test, Plaintiffs have not made out a prima facie case of disparate impact. For the first time, Defendant contends that the 2000 test did not result in disparate impact. Defendant notes that with the cut score of 66, the 2000 test satisfied the EEOC's four-fifths rule.

Although Plaintiffs agree that applying a cut score of 66 ensured that the test results would not violate the EEOC's four-fifths rule, they assert that it is not the sole measure the Court should consider in determining whether or not a test results in disparate impact. Instead, the Court should examine other statistical evidence. The Court agrees.

■ The EEOC adopted the Uniform Guidelines on Employee Selection Process ("EEOC Guidelines"), which define adverse impact as a "substantially different rate of selection in hiring, promotion, or other employment decision which works to the disadvantage of members of a [protected class]." 29 C.F.R. § 1607.16(B). One way to measure adverse impact is the four-fifths rule, but it should be used only to the extent that it is "useful in the particular setting of the case under consideration for advancing the basic purposes of Title VII." *Isabel v. City of Memphis,* 2003 WL 23849732 at 3, n. 5 (W.D.Tenn.2003) (citations omitted). The EEOC Guidelines note that the four-fifths rule is not the only evidence to consider. "Smaller differences in selection rate may nevertheless constitute adverse impact where they are significant in both statistical and practical terms. . . ." 29 C.F.R. 1607.4(D).

Plaintiffs' expert, Dr. Richard DeShon, contends that the statistical evidence supports a finding that the test resulted in "substantial" disparate impact which is significant both statistically and practically. DeShon Aff. at 8, 7. In fact, comparing the mean differences in scores both before and after the cut score was lowered to 66 showed a significant difference. *Id.* at 6–7. Applying a T-test analysis to compare the mean difference between the two groups, there are between 2 and 3.5 standard deviations, depending on which comparison is being made. *Id.* at 7. Dr. DeShon asserts that this is a "substantial and statistically significant difference" which is extremely unlikely to occur due to chance. *Id.* Furthermore, when applying the Z-test to compare the difference in pass rates between African Americans and Caucasians,

Dr. DeShon determined that the 2.74 standard deviation is statistically significant and that the results are highly unlikely to occur by chance. *Id.* at 8. Additionally, using the *d* score as a measure of effect size to determine practical significance, Dr. DeShon noted that there is a practical difference in test performance between black and white officers. *Id.* at 7–8. Therefore, Plaintiffs have made a prima facie showing that the differences in selection rate are significant in both statistical and practical terms.

Defendant argues that the mean scores should not be considered. Instead, Defendant asserts, the Court should only examine the pass rates after Defendant applied the 66 cut score. The cut score of 66 was specifically calculated to make certain that the test satisfied the EEOC four-fifths rule after Defendant determined that the test was discriminatory. However, once Defendant determined that the test was discriminatory, it would be manifestly unfair to find that it became nondiscriminatory simply because the Defendant found the specific cut score that satisfied the four-fifths rule under the EEOC guidelines. Moreover, having eliminated the practical test, Defendant weighted the written test so that the actual score would play a significant role in determining who was promoted and who was not. Therefore, whether or not a candidate passed was not the only concern.

■ The Court finds that Plaintiffs have established that the written test in the 2000 sergeant promotion process caused a disparate impact on African Americans. Furthermore, Defendant has admitted that the 2000 promotional process was invalid. See Order Granting Plaintiffs' Motion for Partial Summary Judgment at 2. Because Plaintiffs have established a prima facie case of disparate impact, the burden of production shifts to Defendant to show that the test was job related or a business

necessity. However, Defendant did not offer any proof that the written test was job related or a business necessity. Therefore, the Court grants Plaintiffs' motion for summary judgment for the Title VII claim of disparate impact as to the 2000 promotional test.

### B. *Promotional Process for 2003*

■ Although Defendant does not dispute that the 2003 test was discriminatory, it argues that summary judgment on only a portion of the Title VII claim is not appropriate under Rule 56 of the Federal Rules of Civil Procedure. However,

> [n]umerous courts have, under certain circumstances, entertained and decided motions for partial summary judgment which address particular issues rather than claims.... A motion for partial summary judgment is recognized as a useful pretrial tool; the Advisory Committee Notes to the 1946 amendment to Rule 56 state: "The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This type of adjudication ... serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact."

*McDonnell v. Cardiothoracic & Vascular Surgical Assoc., Inc.,* 2004 WL 1234138, at *1 (S.D.Ohio) (internal citations omitted).

In the instant case, Plaintiff offered substantial statistical evidence to show that the testing procedure relied on in the 2003 promotions had a discriminatory impact on African Americans. Not only have Plaintiffs successfully established such a prima facie case, but Defendant has readily admitted that the 2003 test used for sergeant promotions had an adverse impact on African–American police officers.

The Court finds, therefore, that Plaintiffs have established a prima facie case of

disparate impact. Because there is no genuine issue of fact concerning this issue, in the interest of narrowing the issues for trial, the Court will adjudicate this issue. Accordingly, the Court grants Plaintiffs' motion for partial summary judgment as to the issue of disparate impact regarding the 2003 promotion test.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Plaintiffs' motion for partial summary judgment as to the disparate impact element of Plaintiffs' Title VII claim.

**IT IS SO ORDERED** this ____ day of February, 2005.