*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0393p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HERLANCER ROSS,

        *Plaintiff-Appellee,*

    *v.*

CITY OF MEMPHIS,

        *Defendant-Appellant,*

WALTER CREWS and ALFRED GRAY, Individually,

        *Defendants.*

No. 04-5298

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-02454—Jon Phipps McCalla, District Judge.

Argued: July 21, 2005

Decided and Filed: September 14, 2005

Before: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and GADOLA, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Louis P. Britt III, FORD & HARRISON, Memphis, Tennessee, for Appellant. David M. Sullivan, Memphis, Tennessee, for Appellee. **ON BRIEF:** Louis P. Britt III, Keith R. Thomas, FORD & HARRISON, Memphis, Tennessee, for Appellant. David M. Sullivan, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

    BOGGS, Chief Judge. Regardless of the way this case is captioned, the real dispute is between the City of Memphis (the "City") and its former police director, Walter Crews, who has also been sued in his individual capacity. The City asserts the attorney-client privilege as to the content of conversations between Crews, while he was police director, and various attorneys employed by the City. However, in the present lawsuit, Crews has raised the advice of counsel as the basis of his qualified immunity defense. Thus, we are asked to determine whether Crews's

_____

[*] The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

invocation of the advice of counsel impliedly waives the attorney-client privilege held by the City. To answer this question, we must first decide whether a municipality can hold the attorney-client privilege. Holding that a municipality can maintain the privilege and that Crews's litigation choices cannot waive the City's privilege, we reverse the district court and remand for further proceedings.

# I

This case is an interlocutory appeal from an ongoing suit in federal district court. Herlancer Ross, a black police officer employed by the City, took part in the 2000 promotion process in hope of becoming a sergeant. The test included a component for which some officers were able to procure the answers in advance of taking the test. Plaintiff was one of these officers, but it remains unclear whether she knew at the time that the questions and answers she was given would appear on the test. Because this component of the test had been compromised, the City eliminated it from the process and evaluated the applicants on the other three components: a written test, performance evaluations, and seniority. Ross was not promoted. In September 2000, she joined fifty-one other officers in suing the City, challenging the promotion processes used in 2000, and later the process in 2003, under Title VII. This case is still ongoing. *See Johnson v. City of Memphis*, 355 F. Supp. 2d 911 (W.D. Tenn. 2005) (granting plaintiffs partial summary judgment); *see also Johnson v. City of Memphis*, 73 F. App'x 123 (6th Cir. 2003) (denying motion to intervene filed by officers successful in 2000 process). Crews, though very involved in the events leading to the *Johnson* case, is not a named defendant in that action.

The suit that is the subject of this appeal arises from events related to the *Johnson* litigation. Ross filed an affidavit in support of plaintiffs' motion for summary judgment and was deposed in the case. She also filed a complaint with the EEOC in January 2001. However, because Ross was one of the officers who had been given test answers in advance, she was also a target in internal disciplinary proceedings. On April 24, 2001, the City initiated disciplinary proceedings against Ross and thirteen other officers. On May 15th, Ross, through counsel, informed defendants that she was a plaintiff in *Johnson* and had provided testimony. She warned them not to retaliate and threatened to sue the City and individual officers if they did.

The City proceeded to hold a hearing on June 11, 2001. Following the hearing, defendant Alfred Gray, Crews's deputy, demoted Ross from her then-current rank of "Patrol Officer II" to "Patrol Officer II Probationary," which resulted in a loss of pay and seniority. The Civil Service Commission reviewed plaintiff's demotion in October 2001. It unanimously rejected the City's reasoning and ordered it to restore plaintiff to her previous position.

On June 7, 2002, plaintiff brought suit against the City, Crews, and Gray. Both Crews and Gray were sued in their individual capacities. She alleged that the defendants violated her rights under 42 U.S.C. §§ 1981, 1983, and 2000e-3, as well as provisions of the Tennessee Constitution and Tennessee Code § 4-21-401 (prohibiting racial discrimination in employment). Crews retired in March 2003.

During discovery, Crews's defense theory emerged. He admitted reviewing Ross's May 15, 2001 letter. He claimed to have talked to attorneys either employed by the City or hired by the City to work on the *Johnson* case about how to proceed. Relying on their advice, Crews claimed, he decided to proceed with Ross's hearing. Crews argues that his reliance on their advice renders his behavior reasonable, thus entitling him to a defense of qualified immunity. However, Crews has also consistently declined to reveal the content of the advice he received because it is protected by attorney-client privilege.

The magistrate judge ordered Crews to reveal the contents of the conversations for the reason that Crews had injected the attorney's advice into litigation. The City objected to the magistrate

judge's order on the grounds that it held the privilege as to those conversations and, therefore, Crews could not impliedly waive its privilege. The district court held that Crews could not assert the privilege after having injected into the litigation the content of legal advice. It issued an opinion ordering Crews to disclose the contents of the conversations. *Ross v. City of Memphis*, 224 F.R.D. 411 (W.D. Tenn. 2004). It reasoned that, in the particular context of a City official claiming qualified immunity based on advice of counsel, the City's privilege "must give way" so that Crews can mount his defense. *Id.* at 414; *see also id.* at 413-14 (outlining reasoning).

## II

The City filed an interlocutory appeal, which is the present case, and a petition for a writ of mandamus. Though two of our sister circuits allow immediate review of discovery orders involving claims of privilege under the collateral order doctrine articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), *see United States v. Philip Morris*, 314 F.3d 612, 617 (D.C. Cir. 2003); *In re Ford Motor Co.*, 110 F.3d 954, 964 (3d Cir. 1997), this court does not ordinarily do so. *See FDIC v. Ernst & Whinney*, 921 F.2d 83, 85 (6th Cir. 1990) (denying jurisdiction under the collateral doctrine in case involving governmental privileges); *In re Grand Jury Proceedings–Gordon*, 722 F.2d 303, 305-06 (6th Cir. 1983) ("*Gordon*") (noting in case involving attorney-client privilege that "an order compelling testimony or denying a motion to quash a grand jury subpoena is not appealable."). An exception exists, however, for those situations where a party claiming a privilege is "powerless to avert the mischief of the order." *Perlman v. United States*, 247 U.S. 7, 13 (1918); *see Gordon*, 722 F.2d at 306-07 (6th Cir. 1983) (applying *Perlman* exception in instances compelling testimony from an attorney). Because the City cannot prevent Crews from complying with the discovery order, a motions panel determined that this court did have jurisdiction over this case. It also dismissed appellant's mandamus petition.

Appellee continues to contest this court's jurisdiction, arguing that the attorney-client privilege has not been established and, thus, this court lacks jurisdiction. Appellee's argument misunderstands the nature of this court's jurisdiction. Our jurisdiction does not depend on the validity of the appellant's underlying claims for relief. In *Perlman v. United States*, the Supreme Court reviewed the interlocutory motion even though it ultimately found against the petitioner. *See* 247 U.S. 13-15 (reviewing Perlman's claim on interlocutory appeal but finding no violation of the Fifth Amendment in government's subsequent use of exhibits made public in previous litigation). Our analysis does not differ because a claim of privilege has been asserted in the litigation. As this court held in *Gordon*, jurisdiction over this dispute is proper because the City cannot prevent Crews from disclosing allegedly privileged information. 722 F.2d at 306-07. As in that case, we are free to decide that the appellant does not have the privilege. *See id.* at 307-08 (deciding privilege had not been implicated). Doing so, however, presents no challenge to our jurisdiction. We therefore now turn to the issues raised in this interlocutory appeal.

## III

"The attorney-client privilege protects from disclosure 'confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.'" *In re Grand Jury Subpoena (United States v. Doe)*, 886 F.2d 135, 137 (6th Cir. 1989) ("*Doe*") (quoting *In re Grand Jury Investigation*, 723 F.2d 447, 451 (6th Cir. 1983)). Whether the attorney-client privilege applies to a given situation is a mixed question of law and fact that this court reviews de novo. *E.g.*, *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 293-94 (6th Cir. 2002) ("*Columbia/HCA Healthcare*").

This privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). Federal courts interpret the privilege's scope "guided

by 'the principles of the common law . . . as interpreted by the courts . . . in the light of reason and experience.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (omissions in original) (quoting Fed. R. Evid. 501). The privilege's primary purpose is to encourage "'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id.* at 403 (quoting *Upjohn*, 449 U.S. at 389). This purpose is served equally whether a corporation or an individual is asserting the privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). The attorney-client privilege is "narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)). However, its scope must be determined in light of its purpose of increasing full and frank communication. *Doe*, 886 F.2d at 137; *see also Columbia/HCA Healthcare*, 293 F.3d at 294 ("The privilege 'applies only where necessary *to achieve its purpose* and protects only those communications necessary to obtain legal advice.'") (emphasis added) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir.1986)). We therefore evaluate appellant's contentions and the district court's reasoning against these principles.

## A

This court has twice assumed without deciding that a government entity such as a municipal corporation can invoke the attorney-client privilege. *See Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998); *Doe*, 886 F.2d at 137-39. Though this court in *Reed* cautioned that applying the privilege broadly to governmental entities ran counter to the "strong public interest in open and honest government," 134 F.3d at 356, we expressed no such hesitance in *Doe*, *see* 886 F.2d at 137-39. In both cases, however, the muncipality's claim of privilege was unsuccessful. *See Reed*, 134 F.3d at 358 (concluding that allegedly privileged communications were not confidential); *Doe*, 886 F.2d at 138-39 (remanding for determination of whether meetings were confidential in light of Michigan Open Meetings Act). Finding no likely obstacle to the City's assertion of privilege in this case, *see* parts III.B-C, *infra*, this court must now determine whether a municipal corporation can assert the attorney-client privilege in the context of civil litigation.

Review of both our sister circuits' precedents and outside authority confirm that a government entity can assert attorney-client privilege in the civil context. Though there is surprisingly little case law on the issue, *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 291 (7th Cir. 2002) ("*Witness*"), what case law there is "generally assumes the existence of a governmental attorney-client privilege in civil suits between government agencies and private litigants." *In re Grand Jury Investigation*, 399 F.3d 527, 532 (2d Cir. 2005) ("*Grand Jury Investigation*"); *see also In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 917 & n.7 (8th Cir. 1997) ("*Subpoena Duces Tecum*") (acknowledging government entities' successful assertions of the privilege in civil cases where "the party seeking information was a private litigant adversarial to the government" and collecting cases); *In re Allen*, 106 F.3d 582, 600-05 & 600-01 n.8 (4th Cir. 1997) (holding that attorney-client privilege attaches to communications between members of the Attorney General of West Virginia's office and hired outside counsel).[1] In fact, the existence of a governmental privilege in the civil context is sufficiently entrenched that parties seeking to prevent application of the privilege in other areas, such as grand jury proceedings, have conceded its applicability in the civil context. *See Grand Jury Investigation*, 399 F.3d at 532 ("The Government concedes, for instance, both that a governmental attorney-client privilege exists generally, and that it may be invoked in the civil context."); *Witness*, 288 F.3d at 291 ("[B]oth parties here concede that,

---

[1] Though these cases usually concern claims of privilege made by federal or state officials as opposed to local officials, other courts' reasoning generally does not differentiate among the levels of government asserting privilege. *See Subpoena Duces Tecum*, 112 F.3d at 916-17 (in case involving White House, criticizing without distinguishing this court's analysis of governmental privilege in *Doe*, which involved a city council).

at least in the civil and regulatory context, the government is entitled to the same attorney-client privilege as any other client.").

Influential secondary literature further confirms that government entities can assert the attorney-client privilege in civil proceedings. Proposed Federal Rule of Evidence 503 would have codified the attorney-client privilege. While Congress did not adopt any of the proposed rules concerning various privileges, courts have observed that Proposed Rule 503 is "'a useful starting place' for an examination of the federal common law of attorney-client privilege." *Subpoena Duces Tecum*, 112 F.3d at 915 (quoting *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994)). As one treatise has observed, "[Proposed Rule 503] restates, rather than modifies, the common-law lawyer-client privilege. Thus, it has considerable utility as a guide to the federal common law." 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 503.02 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997); *see also id.* at § 501.02 (noting that the proposed evidence rules concerning privilege were the culmination of seven years of work done by judges, lawyers, and academics and that the rules were approved by the Supreme Court by a vote of eight to one). The proposed rule extended the privilege to government entities. *See* Proposed Fed. R. Evid. 503(a)(1), *reprinted at* 56 F.R.D. 183, 235 (1972) (describing a client as a "person, public officer, or corporation, association, or other organization or entity, *either public or private*") (emphasis added). Municipalities, which are corporations, would thus be clients entitled to the privilege. Commentary to the rule made explicit "that the 'definition of client includes governmental bodies.'" *Grand Jury Investigation*, 399 F.3d at 532 (quoting published commentary). Another leading secondary source, the Restatement (Third) of Law Governing Lawyers recognizes the existence of a governmental attorney-client privilege. *See* § 74 (2000) ("[A]ttorney-client privilege extends to a communication of a governmental organization . . . ."). While the Restatement noted possible limitations to the privilege when asserted by the government, *Reed*, 134 F.3d at 256, it also recognized the vital role the attorney-client privilege would play in both fostering adherence to law and preventing government entities from being disadvantaged in litigation. Restatement (Third) of Law Governing Lawyers § 74 cmt. b.

Though citation to outside authority is no substitute for our independent judgment, we find these authorities persuasive. As the Supreme Court has observed regarding the corporate privilege, "[b]oth for corporations and individuals, the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice." *Weintraub*, 471 U.S. at 348. We see no reason that that function is no longer served simply because the corporation is a municipality or, more broadly, that the organization or agency is a government entity. Governments must not only follow the laws, but are under additional constitutional and ethical obligations to their citizens. The privilege helps insure that conversations between municipal officials and attorneys will be honest and complete. In so doing, it encourages and facilitates the fulfillment of those obligations. *See Grand Jury Investigation*, 399 F.3d at 534 ("Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business. Abrogating the privilege undermines that culture and thereby impairs the public interest.")

Recently, a split has emerged among several of our sister circuits regarding whether a state or federal government entity can assert attorney-client privilege in grand jury proceedings. *Compare id.* at 533-35 (holding governor's office could assert privilege in grand jury proceeding) *with Witness*, 288 F.3d at 293-95 (holding state agency could not do so); *In re Lindsey*, 158 F.3d 1263, 1278 (D.C. Cir. 1998) ("*Lindsey*") (holding White House could not assert privilege in grand jury proceeding); *and Subpoena Duces Tecum*, 112 F.3d at 924 (same). Without expressing an opinion on the question that has divided our sister circuits, we note only that much of the reasoning deployed against recognizing a governmental attorney-client privilege in grand jury proceedings supports its recognition in the civil context. The *Witness* and *Subpoena Duces Tecum* courts argued that

government entities could not be subject to criminal liability and, thus, the purposes of the privilege would not be served by extending it to the grand jury context. *See Witness*, 288 F.3d at 294 ("A state agency, however, cannot be held criminally liable by either the state itself or the federal government. There is thus no need to offer the attorney-client privilege as an incentive to increase compliance with the laws.") (internal citation omitted); *Subpoena Duces Tecum*, 112 F.3d at 920 ("[T]he actions of White House personnel, whatever their capacity, cannot expose the White House as an entity to criminal liability.").[2] The civil context presents different concerns because government entities are frequently exposed to civil liability. The risk of extensive civil liability is particularly acute for municipalities, which do not enjoy sovereign immunity. Thus, in the civil context, government entities are well-served by the privilege, which allows them to investigate potential wrongdoing more fully and, equally important, pursue remedial options.

## B

Having concluded that a municipality can assert the attorney-client privilege in civil proceedings, we now hold that a municipal official's assertion of the advice of counsel defense does not require the City to relinquish the privilege it holds. In reaching the contrary conclusion, the district court improperly balanced the competing interests of the former official and the City.

The district court began from the premise that the City would normally hold the privilege as to the communications between Crews and his attorneys. *Ross v. City of Memphis*, 224 F.R.D. at 413. But the district court concluded this was a special case. Because Crews "stands somewhat in the nature of a client with respect to the advice he received from the City's attorneys," it held that "in this peculiar case where Defendant Crews is sued in his individual capacity for actions taken in reliance on the advice of the City's counsel, equitable notions of fairness dictate that he be entitled to the right to disclose this information." *Id.* at 414. For the following reasons, we cannot agree.

In *Swidler & Berlin v. United States*, the Supreme Court rejected an exception to the attorney-client privilege when information protected by someone who is deceased would have "substantial importance to a particular criminal case." 524 U.S. at 408. It did so because "[b]alancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces *substantial uncertainty* into the privilege's application." *Id.* at 409 (emphasis added). We believe the district court committed the same error that the Supreme Court found had been committed by the court below in *Swidler & Berlin*. Specifically, the district court balanced the importance of the privileged communications to Crews's defense against the City's interest in maintaining the privilege. The district court's reasoning renders any municipality's privilege dependent on *ex post* litigation choices made by its employees. The uncertainty such balancing creates is worsened by the fact that reliance on the advice of counsel is not usually a component of the qualified immunity defense, which rests on objective considerations. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the '*objective legal reasonableness*' of the action, assessed in light of legal rules that were 'clearly

---

[2]Our sister circuits that would not apply the privilege in the grand jury setting also noted that government lawyers have a higher duty to act in the public interest, and take an oath to that effect. *Witness*, 288 F.3d at 293; *Lindsey*, 158 F.3d at 1275-76; *Subpoena Duces Tecum,* 112 F.3d at 920-21. However, each of those courts explicitly found that duty threatened by a lawyer not making public criminal wrongdoing. *Witness*, 288 F.3d at 293; *Lindsey*, 158 F.3d at 1276; *Subpoena Duces Tecum,* 112 F.3d at 921. Because each court also implied that government entities hold the attorney-client privilege in other contexts, *see Witness*, 288 F.3d at 291 (noting concession that privilege exists in civil and regulatory context); *Lindsey*, 158 F.3d at 1268 ("Courts, commentators, and government lawyers have long recognized a government attorney-client privilege in several contexts."); *Subpoena Duces Tecum*, 112 F.3d at 917 & n.7 (acknowledging successful assertions of governmental privilege in civil cases), we do not interpret our sister circuits as arguing that a government lawyer's obligations deprive governments of the privilege in the civil context.

established' at the time it was taken.") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (emphasis added)).[3]  As the Supreme Court has warned, "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393.[4]  Making the City's ability to invoke attorney-client privilege contingent on litigation choices made by one of its former employees renders the privilege intolerably uncertain.  We therefore must reverse the district court.

In addition, we question whether fairness dictates that the City should be barred from asserting the attorney-client privilege in this case.  Leaving aside whether one can expect a rule such as the attorney-client privilege to be equitable in each case in which it is asserted, *see Grand Jury Investigation*, 399 F.3d at 531 ("The idea that a robust attorney-client privilege will in fact 'promote broader public interests' does not mean that application of the privilege will render justice in every single case."), equitable considerations do not necessarily lead to the conclusion that the City's privilege must give way.  Crews, the defendant claiming reliance on the advice of counsel, is not being treated unfairly.  He retains the use of a qualified immunity defense, which generally turns on the objective reasonableness of an official's actions.  *Anderson*, 483 U.S. at 639; *Harlow*, 457 U.S. at 818-19.  It is not unfair to prevent him from releasing privileged communications with counsel in which he was not the client.  Nor does our ruling prejudice Ross.  A popular image is that "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).[5]  This image is meant to convey that "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Ibid.*  Crews certainly could not assert that he relied on privileged communications and then hide behind the privilege, if he ever had it.  But it is the City that holds the privilege to these communications.  Fairness to the plaintiff may require finding Crews's advice-of-counsel defense insufficient, but it does not require denying the City, which has not asserted such claims, its ability to assert the privilege.  If anything, the district court's order prejudices the City, which loses the attorney-client privilege because of the litigation strategy deployed by its former employee.

---

[3] Thus, reliance on counsel's legal advice only constitutes a qualified immunity defense under "extraordinary circumstances." *York v. Purkey*, 14 F. App'x 628, 833 (6th Cir. 2001); *Buonocore v. Harris*, 134 F.3d 245, 252-53 (4th Cir. 1998); *see generally Harlow*, 457 U.S. at 818-19.

[4] *Swidler & Berlin*'s rationale is also fatal to the reasoning of *Hearn v. Rhay*, 68 F.R.D. 574, 579-80 (E.D. Wash. 1975), which was discussed extensively by the district court. *See Ross*, 224 F.R.D. at 413.  In *Hearn*, the court appears to have concluded that when state officials are sued in their individual capacities under § 1983, "defendants are stripped of their immunity as state officers and will be treated as individuals for purposes of evaluating the breadth of the attorney-client privilege." *Hearn*, 68 F.R.D. at 579-80.  However, this makes the scope of the privilege depend on a related group of *ex post* events, in this case the litigation choices of the plaintiff.  The Supreme Court found the uncertainty brought about by such reasoning to be inconsistent with the purposes of the privilege. *See Upjohn*, 449 U.S. at 393 ("[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected.").  Just as "a client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or criminal matter," *Swidler & Berlin*, 524 U.S. at 409, an official will not know whether his comments will later be used in a § 1983 case or some other civil proceeding.

[5] It seems to us that this phrase, while elegant, is perhaps a mixed metaphor.  Litigants rarely use the attorney-client privilege itself as an offensive tool.  Rather the contents of a privileged communication may be injected into litigation either by making the content of communications a factual basis of a claim or defense or by disclosing the communication itself.  Thus, it is the content of privileged communications that is used as a sword, while the privilege is used as a shield to prevent either testing of the claim or, if some privileged communications have been revealed, amplification or impeachment of the material.

**C**

Of course, the above analysis assumes that the City does have a privilege as to the relevant communications between its attorneys and Crews. This assumption is in all likelihood correct. The district court recognized that generally in conversations between municipal officials and the municipality's counsel, the municipality, not any individual officers, is the client. *Ross*, 224 F.R.D. at 413; *see In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001) ("The default assumption is that the attorney only represents the corporate entity, not the individuals within the corporate sphere . . . ."). This does not mean that an individual can never hold the privilege based on communications with corporate counsel. To do so, however, the individual officer must indicate to the lawyer that he seeks advice in his individual capacity. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ("Absent an indication that the lawyer should act in a capacity other than that of the company's lawyer, a corporate officer will not have a privilege."). Our court, like many others, requires that the individual officer seeking a personal privilege "*clearly* claim[ ]" he is seeking legal advice in his individual capacity. *In re Grand Jury Proceedings, Detroit, Michigan, August 1977*, 570 F.2d 562, 563 (6th Cir. 1978) (alteration and emphasis added), *aff'g* 434 F. Supp. 648, 650 (E.D. Mich. 1977); *see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir. 1986) (using five-step test adopted by many circuits for determining whether individual corporate officer can assert privilege in which the individual must show he "made it clear" he was seeking individual advice). Requiring an individual officer to clearly announce a desire for individual advice is critical; it allows the attorney to gauge whether it would be appropriate to advise the individual given the attorney's obligations concerning representation of the corporation. *In re Grand Jury Proceedings, Detroit, Michigan, August 1977*, 434 F. Supp. at 650 ("If [the officer] makes it clear when he is consulting the company lawyer that he personally is consulting the lawyer and the lawyer sees fit to accept and give communication *knowing the possible conflicts that could arise*, he may have a privilege.") (emphasis added), *aff'd*, 570 F.2d at 563 (affirming for reasons stated by district court).

In this case, however, there is some chance that Crews clearly indicated he sought individual legal advice. The record for this case contains a document purporting to be a memorandum from Crews to the City's attorneys. This document suggests that Crews may have clearly indicated he wanted to talk to the attorneys in his individual capacity. Because the record is not developed on this point, we encourage the district court to consider this issue on remand.

**IV**

We therefore hold both that municipalities can assert attorney-client privilege and that Crews's decision to claim qualified immunity based on advice he received from the City's counsel does not prevent the City from asserting attorney-client privilege. Having removed these obstacles from the City's attempt to assert attorney-client privilege, we note that the City still bears the burden of proving the existence of the privilege, *Dakota*, 197 F.3d at 825, about which there may be some question. *See* part III.C, *supra*. Accordingly, we **REVERSE** the district court's order requiring disclosure of potentially privileged documents and **REMAND** for proceedings consistent with this opinion.